

**GENTRY · LOCKE**
Attorneys

Guy M. Harbert, III
P: (540) 983-9349
F: (540) 983-9400

June 2, 2016

**VIA EMAIL**

Michael Pace, President and CEO
Pace-O-Matic
4150 Blue Ridge Industrial Parkway
Norcross, GA 30071

Re:   Virginia Super Skill game

Dear Mr. Pace:

We have completed our review and analysis of the Virginia Super Skill games manufactured by Pace-O-Matic, Inc. For the reasons set forth below, it is our opinion that the games do not violate the Virginia anti-gambling laws. They are games of skill, not games of chance, and they are legal under the laws of the Commonwealth.

**The Games**

The Virginia Super Skill game is a video touch screen game that involves puzzle-solving skills. Each game terminal contains four separate games, which all operate on a similar principle and differ primarily in terms of graphic presentation.[1] Each game displays symbols on a three by three square grid, and the object is to align three identical symbols in a row. Winning combinations can be horizontal, vertical or diagonal, so that there are eight possible winning lines, much like a tic-tac-toe game. A winning combination is achieved by selecting any one of the nine boxes, which in effect places a "wild card" symbol that will "connect" any two identical *adjacent* symbols to achieve a winning line. Continuing with the tic-tac-toe analogy, the "wild card" can be both an "X" and an "O" at the same time so that it can connect lines of both "Xs" and "Os" simultaneously. Each game is therefore a puzzle, which is solved by selecting the correct square for the "wild card."

The games are activated by inserting currency into a bill reader. The currency is converted to points, with each point having the value of one cent. The games may be played at ten levels, from 40 points (40 cents) up to 400 points (four dollars) in 40 point (cent) increments. Once the level is selected, the player touches a "play" button and the nine symbols "spin" and come to rest displaying the next unsolved puzzle. A thirty second timer begins to run when the

---

[1] The four games are "Pirate's Prize" and "Pirates," which have a pirate motif, "Bombs and Bombshells," which has a military motif, and "Cocktail Cove," which has a beach motif.

10 Franklin Road SE, Suite 900  Roanoke, VA  24011 · PO Box 40013  Roanoke, VA  24022-0013
Toll Free:  866.983.0866
23402/1/7589260v1

 GENTRY LOCKE

Michael Pace, President and CEO
June 2, 2016
Page 2

puzzle is displayed, and the player must make his "wild card" selection within that time. Each unsolved puzzle can be successfully solved, but there are no "automatic" or "default" winners; success depends entirely upon the player using his or her skill to select the correct "wild card" square within the time allotted.

There is frequently more than one "winning" solution to each puzzle. Each game has ten symbols which may be displayed in the puzzle, and each symbol has a different value, ranging from 2.5% of the amount initially played up to 500 times the amount played, and a "bonus" symbol, which takes the player to a different game that will allow him to receive points in an entertaining manner that draws out the excitement of successful skillful play.[2] Therefore, truly successful play depends not only upon selecting a "wild card" square that yields a winning combination, but also selecting the square that results in the greatest number of winning combinations with the highest total value before the time runs out. If the player does not select the square that would give the best result, the game shows the player where the "best spot" is.[3]

The puzzles are randomly built by the machine's central processing unit, and again, every puzzle is capable of being solved, provided the player chooses the correct "wild card" square. However, the lower value symbols appear more often that those with higher value, and often the points yielded for successful play will be less than the amount played (the 2.5, 5, 10% results discussed above). Nevertheless, a player whose skill results in solving the puzzle optionally *always* has an opportunity to win at least 105% of the amount played. If the result of successful play returns less than 105% of the points played, the player is invited to participate in a "Follow Me" game, very similar to the "electronic game of memory skill invented by Ralph H. Baer and Howard J. Morrison" known as "Simon." (https://en.wikipedia.org/wiki/Simon_(game)). In this game nine animated colored circles are displayed. Using movement and sound, a pattern is

---

[2] The bonus round in three of the four games are "point and shoot" contests, where the objective is to hit as many moving targets on the screen as possible within a limited time – such as "shooting" various military targets with a "cannon" or "photographing" fish with a "camera." Points are awarded for each successful "hit." The better a player's hand-eye coordination, the greater his chances of winning. A complete lack of success on these bonus games will mean that the player loses whatever his initial play amount was (from 40 to 400 points), but even partial success may generate points considerably in excess of that initial play. In the fourth game, "Pirates," a set number of points is awarded in the bonus round, but the player gets to watch the awarding of those points by means of an entertaining video presentation.

[3] The games contain on screen instructions which summarize the game play as follows:

> TO WIN: TOUCH ANY SYMBOL TO MAKE IT 'WILD'. THE OBJECT IS TO MATCH 3 LIKE SYMBOLS IN A ROW (MAYBE MORE THAN ONE LINE) THAT IS THE HIGHEST TOTAL VALUE BEFORE THE TIME RUNS OUT! PARTIAL PRIZES ARE AWARDED FOR LESS THAN PERFECT PLAY. MATCH 3 [bonus symbols] TO START THE BONUS GAME.

 GENTRY LOCKE

Michael Pace, President and CEO
June 2, 2016
Page 3

established which the player must follow correctly through twenty-five rounds.[4]  The instructions for this game appear on the screen as well:

> Nine symbols will be displayed.  To answer correctly, touch the symbols in the correct animated pattern.  Each time the symbols are touched correctly, an additional symbol will be added to the pattern.

Successful play of the "Follow Me" game will result in a total win of 105% of the points originally played.[5]

Finally, the game also has a feature that allows the player to see the result of the next play or "spin" *before* committing to play any points.  This can be done for every level before any points are played.

### Legal Analysis – The Virginia Anti-Gambling Laws

*Gambling Offenses*

Virginia law criminalizes certain gambling activities, declaring that it is a misdemeanor to engage in "illegal gambling," Va. Code §18.2-326,[6] or to be in possession of a "gambling device," Va. Code § 18.2-331,[7] and a felony to conduct an "illegal gambling operation," which is generally defined as an operation that generates $2,000 per day. Va. Code §18.2-328.[8]  Certain

---

[4] In the first round, there is a single movement and sound, in the second there are two, three in the third, and so on. Obviously, the more movement and sound there is to remember, the more difficult the task becomes.

[5] If the puzzle was successfully solved, but less than 105% of the original amount of points played is awarded, then successful play of the "Follow Me" game awards whatever number of points is needed in addition to those awarded to net the player 105%. No points are lost if the "Follow Me" game is not successfully played. The player is not invited to participate in the "Follow Me" game if he fails to solve the puzzle in the manner that gives the best possible outcome.

[6] In pertinent part, this statute provides: "Except as otherwise provided in this article, any person who illegally gambles or engages in interstate gambling as defined in § 18.2-235 shall be guilty of a Class 3 misdemeanor. If an association or pool of persons illegally gamble, each person therein shall be guilty of illegal gambling."

[7] This statute states: "A person is guilty of illegal possession of a gambling device when he manufactures, sells, transports, rents, gives away, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of any gambling device, believing or having reason to believe that the same is to be used in the advancement of unlawful gambling activity. Violation of any provision of this section shall constitute a Class 1 misdemeanor."

[8] This statute reads as follows:

> The operator of an illegal gambling enterprise, activity or operation shall be guilty of a

23402/1/7589260v1

**GENTRY LOCKE**

Michael Pace, President and CEO
June 2, 2016
Page 4

forfeiture proceedings may also apply with respect to the property used in "illegal gambling." Va. Code §19.2-386.30.[9] Obviously, analysis of any gambling issue must begin with the definition of the two key terms: "illegal gambling," and "gambling device."

## *What Constitutes "Illegal Gambling"?*

The code defines "illegal gambling" as "the making, placing or receipt of any bet or wager in the Commonwealth of money or other thing of value, made in exchange for a chance to win a prize, stake or other consideration or thing of value, dependent upon the result of any game, contest or any other event the outcome of which is uncertain or a matter of chance, whether such game, contest or event occurs or is to occur inside or outside the limits of the Commonwealth." Va. Code §18.2-325. This definition contains three essential components: (1) there must be *consideration* in the form of a "bet or wager,"[10] (2) which is made for in exchange

---

> Class 6 felony. However, any such operator who engages in an illegal gambling operation which (i) has been or remains in substantially continuous operation for a period in excess of thirty days or (ii) has gross revenue of $2,000 or more in any single day shall be fined not more than $20,000 and imprisoned not less than one year nor more than ten years.
>
> As used in this section, the term "gross revenue" means the total amount of illegal gambling transactions handled, dealt with, received by or placed with such operation, as distinguished from any net figure or amount from which deductions are taken, without regard to whether money or any other thing of value actually changes hands.

[9] This statute reads: "All money, gambling devices, office equipment and other personal property used in connection with an illegal gambling enterprise or activity, and all money, stakes and things of value received or proposed to be received by a winner in any illegal gambling transaction, which are lawfully seized by any law-enforcement officer or which shall lawfully come into his custody, shall be forfeited to the Commonwealth in accordance with the procedures contained in Chapter 22.1."

[10] The Virginia Code does not define "wager" or "bet," but we think a Virginia court would adopt the generally accepted definitions. A "wager" has been defined as:

> A contract by which two or more parties agree that a certain sum of money or other thing shall be paid or delivered to one of them or that they shall gain or lose on the happening of an uncertain event or upon the ascertainment of a fact in dispute, where the parties have no interest in the event except that arising from the possibility of such gain or loss. The word "wagering" is practically synonymous with the words betting and gambling, and the terms are so used in common parlance and in statutory and constitutional enactments.

Black's Law Dictionary, (5th Ed.) p. 1416, citing McDonald v. Bryant, 381 S.W.2d 736, 738 (1964). Similarly, the word "bet" has been defined as:

> An agreement between two or more persons that a sum of money or other valuable thing, to which all jointly contribute, shall become the sole property of one or some of them on the happening in the future of an event at present uncertain, or according as a question

## GENTRY LOCKE

Michael Pace, President and CEO
June 2, 2016
Page 5

for an opportunity to win a *prize*, and (3) and that opportunity must be decided by a matter of *chance*.[11] If any one of the three elements does not exist, the activity does not constitute "illegal gambling."[12]

### *What Constitutes a "Gambling Device"?*

The General Assembly has struggled to define just what constitutes a "gambling device" under Virginia law, having amended Va. Code §18.2-325(3) twice in the past six years in its effort to do so. Under the current version of the statute, anything can be a "gambling device" if it is "actually used in an illegal gambling operation or activity." Va. Code § 18.2-325(3)(a). Therefore, the initial focus must be upon the definition discussed in the preceding section – if the activity constitutes "illegal gambling," then the instruments used to carry out that activity are "gambling devices."

However, there is a more technical definition in subsection (3)(b) of the statute that must be separately analyzed. There, it is declared that a "gambling device" is "any machine[13] ... which operates ... in such manner that, *depending upon elements of chance*, it may ... determine the prize ... to which the player is entitled."[14] Va. Code § 18.2-325(3)(b) (emphasis added).

---

disputed between them is settled in one way or the other. A contract by which two or more parties agree that a sum of money, or other thing, shall be paid or delivered to one of them on the happening or not happening of an uncertain event.

Id., p. 146. Key to both definitions is the notion that the payment of the consideration will be based upon the uncertain outcome of an event. Where the outcome is certain, there can be no bet or wager.

[11] This definition of gambling has been accepted by multiple Virginia authorities: 1997 Virginia Attorney General Opinions 97; 1996 Virginia Attorney General Opinions 99; 1991 Virginia Attorney General Opinions 288; Maughs v. Porter, 157 Va. 415, 161 S.E. 242 (1931); see also, Rosenberg v. Commonwealth, 165 Va. 739, 181 S.E. 368 (1935); Vegas Time Ass'ts., Inc. v. Granfield, 18 Va. Cir. 33 (Fairfax Co., 1988); Newport Enterprises, Inc. v. Virginia ABC Board, 13 Va. Cir. 175 (City of Norfolk, 1988).

[12] For example, when skill predominates over chance in determining the outcome of the event, there is no gambling even if the elements of prize and consideration are present. 1987-88 Attorney General Opinions, p.284, May 31, 1988; 1987-88 Attorney General Opinions p. 287, July 20, 1988. Likewise, if nothing is paid or offered in order to participate in the event, there is no gambling even if the game is one of chance and a prize is awarded. 1997 Virginia Attorney General Opinion 97; 1972-73 Virginia Attorney General Opinion 238; 69-70 Virginia Attorney General Opinion 167.

[13] The concept of "machine" in this context specifically includes "electronic and video versions thereof" and "those dependent upon the insertion of a coin or other object for their operation." Va. Code §18.2-325(3)(b).

[14] The current definition is thankfully much simpler and more flexible than the previous version in effect until 1972, which declared illegal any "device that operates on the nickel-in-the-slot principle, in operation of which *any element of chance whatever may enter* ...". Va. Code §18.1-329(1) (emphasis added).

**⊕ GENTRY LOCKE**

Michael Pace, President and CEO
June 2, 2016
Page 6

**The Virginia Super Skill Games Do Not Violate The Virginia Anti-Gambling Laws**

We think it is self-evident that the Virginia Super Skill games involve the element of "consideration;" after all, the player pays to play. The player also has the opportunity to win a "prize." However, although the puzzles are randomly generated, successful play depends upon (1) the player's puzzle solving skills, (2) when a bonus game becomes available on three of the four games,[15] the player's hand-eye coordination, and, (3) when the puzzle is solved but successful play does not result in an award of points in excess of 105% of those played, the player's memory skills in the "Follow Me" game. In short, unless the player chooses to forego an opportunity, he can only lose if his skill proves to be insufficient. Therefore, as a matter of common sense, it would seem that these are not "games of chance."

There are few Virginia court cases that provide much in the way of guidance as to what constitutes an illegal "game of chance." However, the Virginia Attorney General has issued several opinions that shed considerable light upon the issue. In 1988 the Attorney General analyzed two different games, and found both to be legal. First, she addressed a mechanical crane game, which she described as follows:

> The machine you describe is operated by inserting a coin into it, which activates a crane with claws. The player then manipulates the crane by the use of two control buttons and attempts to pick up a stuffed toy animal resting at the bottom of the machine beneath the crane. If the player successfully secures the animal with the crane, the crane moves toward a receptacle where the toy is deposited for retrieval by the player.

(1987-88 Attorney General Opinions, p.284, May 31, 1988). She concluded that the decisive legal issue was "whether the winning of a prize from the machine ... depends upon 'elements of chance' – that is, *whether chance is the predominant factor in winning a prize*." Id., p. 285 (emphasis added). She concluded that "[w]hile chance undoubtedly plays some role in the operation of the crane, chance does not predominate to the extent that the machine would fall within the meaning of a 'gambling device.'" Id.

Several months later, she analyzed a machine similar to a "coin pusher," which she described as:

> ... operated by inserting small tokens that have been purchased from the game operator into a metal slot, or "shooter," which the player moves from

---

[15] Again, the "bonus" award in the "Pirates" game is predetermined; the player is required to do nothing other than start the animation by which the points won through the skillful solving of the puzzle are awarded.

23402/1/7589260v1


# GENTRY LOCKE

Michael Pace, President and CEO
June 2, 2016
Page 7

> side to side to roll the game tokens onto the playing surface of the machine. When enough game tokens are on the playing surface, an arm which moves in a forward and backward motion over the rear portion of the surface will come into contact with the game tokens and ultimately cause the game tokens, larger plastic prize tokens, or other prizes to fall off the front ledge of the playing surface and down a chute where they can be recovered by the player The larger plastic prize tokens can then be exchanged for other prizes. The bar which pushes the tokens forward can be stopped by depressing a button. Prior to reactivating the bar to move it in a forward motion, the player may attempt to place a number of game tokens on the playing surface in order to increase the probability of recovering the larger plastic prize tokens or prizes.

Id., p. 287. She again stated that "the threshold question is whether the winning of a prize from the machine depends upon 'elements of chance' — that is whether chance is the predominant factor in winning a prize" and concluded that "[i]f chance is not the predominant factor in winning a prize, the machine is not a 'gambling device' as defined in 18.2-325(2)(b)." Id., p. 288. Because "[t]he player exerts control over (1) the shooter in attempting to place tokens on the playing surface and (2) the bar in deciding whether or not it should be stopped while the tokens are being played," she found that "skill, rather than chance, is the predominant factor." Id. Finally, she again observed that "[w]hile chance undoubtedly plays some role in the operation of the machine, it is my opinion that chance does not predominate to the extent that the machine would fall within the meaning of a 'gambling device.'" (Id.).

We believe that these two opinions provide very strong support for the conclusion that the Virginia Super Skill games are games of skill, and therefore do not fall within the definition of "gambling device." The player's decisions and actions directly influence the outcome of the games. While some chance may be involved, it is the player's skill that determines the outcome.[16]

---

[16] The "skill predominates over chance" analysis has been applied by other attorney generals in other less similar contexts as well. A bass fishing tournament has been found to be a game of skill. 1975-76 Attorney General Opinions p. 2070. "In contrast, another Opinion concludes that the game of Skilo, which combines the elements of bingo and bowling on a miniature lane, constitutes illegal gambling since 'the opportunity for skill is extremely small.'" 1987-88 Attorney General Opinions p. 285, citing 1971-72 Attorney General Opinions p. 260). Use of this analysis is also consistent with the generally accepted definitions of a "game of chance." Black's Law Dictionary defines the term is as follows:

> One in which result as to success or failure depends less on skill and experience of player than purely fortuitous or accidental circumstances incidental to game or manner of playing it or device or apparatus with which it is played, but not under control of player.

Black's Law Dictionary (5th Ed.), p. 611, citing, Kansas City v. Caresio, 447 S.W.2d 535, 537 (Mo. App. 1974). The standard lay definition is no different: "a game (as a dice game) in which chance rather than skill determines the

 GENTRY LOCKE

Michael Pace, President and CEO
June 2, 2016
Page 8

We think it is also of considerable significance that a court in another jurisdiction – Pennsylvania – has found these games to be legal games of skill. In the case of In re Pace-O-Matic, Inc. Equipment, M.D. 965-2013 (Ct. Common Pleas, Beaver County 2013), the court utilized the "skill vs. chance" analysis that we think a Virginia court would apply,[17] and concluded that the games were legal. The court noted that "[a]lthough there often is ... an 'obvious' position where placement of the wild would generate a nonzero score, several puzzles have a position where placement of the wild will lead to a more advantageous score," and concluded that "[i]t takes skill for a player to recognize both which symbols are most advantageous to his or her payout and which position will maximize the player's score." Id., pp. 7-8. The court went on to note that a player who lacks the skill to determine the most advantageous placement of the wild symbol "will not achieve as high a score as one who does recognize those patterns," and found that "[w]ere the game one predominantly based on chance, one would reasonably expect that a skilled player and an unskilled player would stand to gain roughly the same score ." Id., p. 8. The court found that the fact the game used a random number generator to produce the puzzles was irrelevant, as it did not "determine whether a player wins or loses," but simply to "determine which puzzle in a finite pool of puzzles will be presented to the player." Id. Finally, the court noted that unlike a game of poker where even the most skilled player is "subject to defeat at the turn of the cards ... the players of the Pennsylvania Skill game are not at the mercy of the hand they are dealt .... In this game, the player's choices are the "instrumentality for victory'" – in sharp contrast to the capricious nature of card dealing and shuffling present in a traditional game of Texas Hold 'Em." Id. The court then went on to reach

---

outcome." http://www.merriam-webster.com/dictionary/game%20of%20chance.

[17] The court observed:

> That successful play is determined by chance rather than skill is an element essential to a finding that the machine is a gambling device per se. Courts must determine in each case the relative amounts of skill and chance present in the play of each machine and the extent to which skill or chance determines the outcome. In order for a game to constitute illegal gambling, it must be a game where chance predominates rather than skill. A showing of a large element of chance, without more, is not sufficient, and the outcome need not be wholly determined by skill in order for a machine to fall outside the gambling per se category. The mere fact that a machine involves a substantial element of chance is insufficient to find that a machine [is] a gambling device.

> A game decided predominately on the basis of probability than any real input of skill from a player will be a game of chance. The level of interactivity and the consequences of a player's choices in playing the game are relevant in determining whether the game is one of chance or skill ...

(Id., pp. 5-6, citing Commonwealth v. Two Elec. Video Poker Game Machs., 465 A.2d 973, 977 (Pa. 1983). We believe that is precisely the analysis a Virginia court would adopt.

23402/1/7589260v1



**GENTRY LOCKE**

Michael Pace, President and CEO
June 2, 2016
Page 9

the rather self-evident conclusions that the bonus game, the outcome of which is dependent upon "hand-eye coordination and dexterity," and the "Follow Me" game, which is decided by the player's memory skill, are not games of chance. Id., pp. 10-11.

## CONCLUSION

It is our opinion that if a Virginia court were to address the question of whether the Virginia Super Skill games constituted "illegal gambling devices," the court would apply a "skill vs. chance" analysis and conclude that the element of skill predominates over the element of chance so that the games are legal. This conclusion would be consistent with prior opinions of the Virginia Attorney General, the commonly accepted definitions of "games of skill" and "games of chance," and the conclusion of court in Pennsylvania, which conducted an exhaustive analysis of the games.

Very truly yours;

GENTRY LOCKE

Guy M. Harbert, III

GMH,III/fv



**Nick Farley & Associates**
*6401 Davis Industrial Parkway*
*Suite A*
*Solon, Ohio 44139*
*(440) 914-TEST (8378)*
<u>*www.nfa777.com*</u>

November 3, 2017

Mr. Guy M. Harbert, III
Gentry Locke Attorneys
10 Franklin Road South East, Suite 900
Roanoke, Virginia 24011

Re:    Report on the review and analysis of the *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663* developed by POM of VA, LLC.

Dear Mr. Harbert:

By request of counsel, *Nick Farley & Associates, Inc.* has conducted a review and examination of the *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663* developed by POM of VA, LLC. Our review and examination has been undertaken on behalf of Mr. Guy M. Harbert III of Gentry Locke Attorneys for the benefit of POM of VA, LLC, the successor to Pace-O-Matic, Inc. This document will be divided into sections representing the various stages of review and analysis conducted.

**Section I – System Components**

The *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663* reviewed consisted of the following components:

| Component Name | Version |
|---|---|
| *Cutting EDGE Queen of Virginia Skill System* | *SKL 503.06 VIR 1663* |

The *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663* is a stand-alone machine that offers different game themes that a patron may select to play. The *Cutting EDGE Queen of Virginia Skill System* contains a touch screen that is used to navigate through the system. A patron inserts money into the *Cutting EDGE Queen of Virginia Skill System* through a bill acceptor located on the front side of the cabinet. The bill acceptor accepts U.S. notes of varying denominations. Bills inserted are displayed on the video screen as "Points" available for game play purchase, where one "Point" equals one cent.

*Nick Farley & Associates*
<u>www.nfa777.com</u>

POM of VA, LLC - *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663* - Harbert
NA_PACE_3995-01_EW – November 3, 2017
Page 2 of 15

### Section II - General Information

The *Cutting EDGE Queen of Virginia Skill System* offers five (5) different game themes. These game themes are identified as follows:

1. *Bombs and Bombshells*
2. *Fishy Loot*
3. *Living Large*
4. *Lucky Fruit*
5. *Pirates*

Game play begins with the patron selecting an available game theme and one of the play levels with which to participate. A patron may change the quantity of points they wish to use at any time prior to engaging in game play. Each game theme contains a "Next Puzzle" feature which allows the patron to view the very next game puzzle by pressing the "Next Puzzle" icon on the video screen. At any given time prior to the initiation of a game, the patron may preview the next game puzzle. No payment or purchase is required for the participant to exercise the ability to cause the electronic system to disclose the next game puzzle for the game theme and play level selected. The patron can then touch the "PLAY" icon on the video screen or press the "PLAY" button on the cabinets' exterior to initiate a game.

Each game theme is constructed of a 3x3 grid that will display symbols to the patron, similar to a "tic-tac-toe" arrangement. Once the patron initiates game play, the symbols in the 3x3 grid will spin and present the patron with a new set of symbols. The patron must then select which symbol in the 3x3 grid to replace with a "Wild" symbol. The patron must also consult the screen to determine if multiple winning combinations may exist, and the value of each combination, to determine the best winning outcome. The patron may place the "Wild" symbol in any one of the 9 spaces in the 3x3 grid. The object of the game is for the patron to recognize the best winning game outcome and select the appropriate symbol to replace with a "*Wild*" symbol that will align three (3) like symbol combinations on any line in the 3x3 grid. There may be several winning combinations; therefore the patron must select the "best" winning combination to maximize the outcome. The patron must make this selection within the allotted time (30 seconds), failure to do so results in a losing outcome.

It should be noted that the initial nine (9) icons displayed will not present an automatic winning combination. The patron must engage in the selection of a symbol to be chosen as "*Wild*" in order to align three like symbols on one or more lines of the game play area in order to obtain a winning game outcome. Additionally, it should be noted that not all plays initiated on the *Cutting EDGE Queen of Virginia Skill System* will have a potential winning outcome. However, as will be described later, every play can still result in a winning outcome when the "Follow Me" feature is invoked and is successfully completed by the patron.

Each game theme on the *Cutting EDGE Queen of Virginia Skill System* contains finite pools of game outcomes for each game theme and play level. The game outcomes that are played

*Nick Farley & Associates*
www.nfa777.com

POM of VA, LLC - *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663* - Harbert
NA_PACE_3995-01_EW – November 3, 2017
Page 3 of 15

from the finite pools are played without replacement until the entire pool has been exhausted, at which time it is automatically replenished. The game outcomes that are selected from the finite pools are used in the construction of each game puzzle presented to the patron. The "Next puzzle" disclosure is available to the patron in such a way that any patron can preview the next game puzzle. Each *Cutting EDGE Queen of Virginia Skill System* has its own dedicated pools of outcomes assigned to it.

When previewing a game puzzle, patrons are viewing a puzzle from the finite pools that are assigned to the *Cutting EDGE Queen of Virginia Skill System* terminal that they are currently using. Should the patron redeem their points from the *Cutting EDGE Queen of Virginia Skill System* terminal and then insert money to play on a different *Cutting EDGE Queen of Virginia Skill System* terminal, then the patron will be availed to a different game puzzle which is constructed from a different set of game outcomes which are dedicated to that terminal.

The *Cutting EDGE Queen of Virginia Skill System* makes use of a random number generator (RNG) when selecting the game outcomes from the finite pools of available game outcomes. The RNG selects the game outcomes in such a way that there is always a "Next Puzzle" game outcome for the patron to view. As the game outcomes are used, the RNG continues to select the "Next Puzzle" game outcome ensuring that there is always a "Next Puzzle" game outcome for the patron to view. After each game outcome is used, the "Next Puzzle" game outcome becomes the current game outcome, and a new "Next Puzzle" game outcome is selected and available to be viewed by the patron. Thus each game outcome will have a "Next Puzzle" game outcome ready to replace the current game outcome that is used by the patron.

Upon selection of the game theme and play level, which will determine how many points will be expended, the next game puzzle can be displayed by pressing the "Next Puzzle" icon on the screen. The next game puzzle will be displayed in advance of committing any points. The patron can then choose to either play the puzzle displayed or exit the game. A patron is not required to exhaust all of their points at once or on the same game theme. The game themes that are available on the *Cutting EDGE Queen of Virginia Skill System* are covered in more detail in Section III – Game Specific Information.

The *Cutting EDGE Queen of Virginia Skill System* contains a *"Follow Me"* feature, which is configurable by the manufacturer, or by personnel with manufacturer access to the system. As configured, when the patron has correctly solved the puzzle and wins a prize that is less than 105% of the purchase price to play the game, the patron is afforded an option to select the *"Follow Me"* bonus feature. The *"Follow Me"* bonus feature will provide the patron with an opportunity to win 105% of the initial purchase price to play the feature. The *"Follow Me"* bonus feature is similar to the children's game "Simon", whereby the patron must repeat a sequence. When the patron elects to play the *"Follow Me"* bonus feature, the patron terminal will display a page detailing the "instructions" for the *"Follow Me"* bonus feature. The patron terminal will display a 3x3 grid of nine (9) colored circles. These circles will

*Nick Farley & Associates*
www.nfa777.com

illuminate in a random sequence that the patron will have to repeat, starting with one (1) circle being lit. As configured, the patron will need to follow (repeat) the correct sequence for a total of twenty-five (25) rounds of play, with each sequence adding another circle, until a total of twenty-five (25) sequences are successfully completed. If performed successfully, the patron is assured a prize of 105% of the purchase price to play the game.

If the patron fails to complete the twenty-five (25) sequences, either by touching the wrong symbol, or by running out of the allotted time for each round, the bonus feature will end and no additional prize will be awarded. Upon completion of the *"Follow Me"* bonus feature, the patron terminal will return to its normal operating state. The *"Follow Me"* bonus feature is not offered if the patron does not correctly solve a puzzle with a potential winning outcome, or if the time to solve a puzzle that contains a potential winning outcome expires.

Each game theme includes a Help feature. Activating the Help feature within a game theme produces a screen which furnishes explanations and displays the awards chart for that particular game theme.

All prizes won are displayed as "Win" and added to the "Points" available for additional game play purchases. The patron may redeem accumulated "Points" after each game play. Redemption of "Points" is accomplished by simply pressing the "TICKET" button, or touching the "Redeem" icon on the video screen. All accumulated "Points" will be issued on a printed ticket showing a monetary value, with each "Point" equivalent to one cent. The printed ticket may be presented to the local venue operator for cash redemption.

### Section III - Game Specific Information

*Nick Farley & Associates, Inc.* has evaluated each of the five (5) game themes offered by the *Cutting EDGE Queen of Virginia Skill System*. Each theme affords a patron an opportunity to select options that determine the number of points to be expended per play, and allows the patron to view the "Next Puzzle" game outcome. The game theme and play level will determine the specific finite pool from which game outcomes will be selected.

#### Game Themes
The five (5) game themes that are available on the *Cutting EDGE Queen of Virginia Skill System* are described below:

#### Bombs and Bombshells
The *Bombs and Bombshells* game theme contains a total of ten (10) symbols based primarily upon a military theme. The *Bombs and Bombshells* game theme presents nine (9) icons, constructed in a 3x3 grid to the patron. The game theme allows the patron to select a play level, which determines the quantity of points that will be expended to play a game. As configured, the play levels for the game theme are available at 40, 80, 120, 160, 200, and 400 points per play.

*Nick Farley & Associates*
www.nfa777.com

POM of VA, LLC - *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663* - Harbert
NA_PACE_3995-01_EW – November 3, 2017
Page 5 of 15

The *Bombs and Bombshells* game theme contains a bonus feature. To enter the bonus feature, three (3) "Bonus" symbols must be successfully aligned on a pay line on the 3x3 grid. The bonus feature is based upon a war scene. The patron is presented with a cannon that will fire upon touching the screen. Military icons (ships, tanks, helicopters, planes, etc.) will appear on the screen. The object of the bonus feature is to destroy as many military icons within the allotted time of thirty (30) seconds. There is a prize associated with each military icon. A listing of all the military icons that may appear during the course of the bonus feature, and their associated prize amount, is displayed along the bottom of the screen for the entire duration of the bonus feature. A running record of the destroyed military icons will also be tracked along the bottom of the screen. Upon completion of the bonus feature, the patron will be awarded the points that were earned from participating in the bonus feature. Should the patron fail to destroy any of the war icons that appear on the bonus screen then any potential prizes that could be awarded from the bonus feature will be forfeited.

The *Bombs and Bombshells* game theme offers the patron a "Next Puzzle" feature which will allow the patron to view the next game puzzle. Dependent upon the play level that the patron has selected, a different game puzzle will be displayed to the patron. The "Next Puzzle" feature will present the patron with an alternate display which will temporarily show the next game puzzle on the 3x3 grid.

### Fishy Loot

The *Fishy Loot* game theme contains a total of eleven (11) symbols based primarily upon a fishing theme. The *Fishy Loot* game theme presents nine (9) icons, constructed in a 3x3 grid to the patron. The game theme allows the patron to select a play level, which determines the quantity of points that will be expended to play a game. As configured, the play levels for the game theme are available at 40, 80, 120, 160, 200, and 400 points per play.

The *Fishy Loot* game theme contains a bonus feature. To enter the bonus feature, three (3) "Bonus" symbols must be successfully aligned on a pay line on the 3x3 grid. The bonus feature is based upon a pick style game, in which the patron is presented with five (5) "Fish" symbols. The patron must select from the fish symbols within a thirty (30) second time limit. Each fish symbol selected will reveal a prize amount which will be added the bonus points meter displayed during the bonus. The bonus feature ends when either the thirty (30) timer expires or when a "Fish" icon swims off of the screen. Upon completion of the bonus feature, the patron will be awarded the points that were revealed from participating in the bonus feature. Should the patron fail to select any of the fish icons that are displayed on the bonus screen, then the bonus feature will play and award any prizes to the patron automatically.

The *Fishy Loot* game theme also contains a "Bonus Spin" feature. For the *Bonus Spin* feature to be initiated, three (3) "Bonus Spin" symbols must be successfully aligned on a pay line on the 3x3 grid. When the *Bonus Spin* feature is initiated, the patron is granted ten (10) bonus

*Nick Farley & Associates*
www.nfa777.com

spins which will play automatically. Upon completion of the bonus feature, the patron will be awarded the total prize amount that was revealed during the bonus.

The *Fishy Loot* game theme offers the patron a "Next Puzzle" feature which will allow the patron to view the next game puzzle. Dependent upon the play level that the patron has selected, a different game puzzle will be displayed to the patron. The "Next Puzzle" feature will present the patron with an alternate display which will temporarily show the next game puzzle on the 3x3 grid.

### Living Large

The *Living Large* game theme contains a total of thirteen (13) symbols based primarily upon a luxury theme. The *Living Large* game theme presents nine (9) icons, constructed in a 3x3 grid to the patron. The game theme allows the patron to select a play level, which determines the quantity of points that will be expended to play a game. As configured, the play levels for the game theme are available at 40, 80, 120, 160, 200, and 400 points per play.

The *Living Large* game theme contains three (3) different bonus features. To enter one of the bonus features, three (3) Bonus symbols must be successfully aligned on a pay line on the 3x3 grid. Each bonus feature available contains a different multiplier amount which will multiply the total prize amount won by the multiplier associated with the bonus feature. The bonus feature and associated multiplier amount that is displayed to the patron is dependent upon the bonus symbol that is aligned on the 3x3 grid. The bonus symbols that are available on the game include the following:

- Three (3) *1x Bonus* symbols presented on the reels will award a 1x bonus multiplier during the bonus.
- Three (3) *2x Bonus* symbols presented on the reels will award a 2x bonus multiplier during the bonus; and
- Three (3) *3x Bonus* symbols presented on the reels will award a 3x bonus multiplier during the bonus.

When the bonus feature is initiated, the patron will be presented with an auto body shop scene with a luxury vehicle. The patron is also presented with a prize wheel containing various vehicle upgrades. Each vehicle upgrade on the prize wheel is associated with a multiplier amount, which are also displayed during the bonus feature. The multiplier amounts that are associated with the various vehicle upgrades will multiply the patron's play level and award the corresponding prizes. The patron will be awarded prizes equal to the patron's play level multiplied by the multiplier amounts obtained during the bonus feature. The prizes that are awarded to the patron are also multiplied by the multiplier associated with the *Bonus* symbols that were successfully aligned on a pay line of the 3x3 grid (ex. Three (3) *3x Bonus* symbols will multiplier the patron's total prize amount obtained during the bonus feature by 3x).

POM of VA, LLC.- *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663* - Harbert
NA_PACE_3995-01_EW -- November 3, 2017
Page 7 of 15

In addition to the various vehicle upgrades, the wheel displayed on the screen also contains "Collect" spaces which will collect the patron's total prize amount and end the bonus feature. The patron must initiate the spin by touching the screen to begin the bonus feature. The wheel will spin and stop on a vehicle upgrade displayed on the wheel. The bonus feature will continue to allow the patron to spin the wheel until the "Collect" value is selected which will end the bonus feature. The bonus feature is merely an entertaining display and the patron's actions with the bonus feature have no control over the game outcome.

The *Living Large* game theme also contains a "Bonus Spin" feature. For the *Bonus Spin* feature to be initiated, three (3) "Bonus Spin" symbols must be successfully aligned on a pay line on the 3x3 grid. When the *Bonus Spin* feature is initiated, the patron is granted ten (10) bonus spins which will play automatically. Upon completion of the bonus feature, the patron will be awarded the total prize amount that was revealed during the bonus.

The *Living Large* game theme offers the patron a "Next Puzzle" feature which will allow the patron to view the next game puzzle. Dependent upon the play level that the patron has selected, a different game puzzle will be displayed to the patron. The "Next Puzzle" feature will present the patron with an alternate display which will temporarily show the next game puzzle on the 3x3 grid.

### Lucky Fruit

The *Lucky Fruit* game theme contains a total of eleven (11) symbols based primarily upon a fruit theme. The *Lucky Fruit* game theme presents nine (9) icons, constructed in a 3x3 grid to the patron. The game theme allows the patron to select a play level, which determines the quantity of points that will be expended to play a game. As configured, the play levels for the game theme are available at 40, 80, 120, 160, 200, and 400 points per play.

The *Lucky Fruit* game theme contains a bonus feature. To enter the bonus feature, three (3) "Bonus" symbols must be successfully aligned on a pay line on the 3x3 grid. The bonus feature is based upon a pick style game, in which the patron is presented with eight (8) "Apple" symbols. In addition to the *Apple* symbols, the available prizes that can be won are displayed along the right side of the screen throughout the duration of the bonus feature. The prizes that may be awarded are presented as a series of four (4) different multipliers. The patron must select from the displayed *Apple* symbols, which will reveal a multiplier amount and will match one of the displayed prize multipliers. The patron must continue to select from the available *Apple* symbols in order to match a pair of *Apples* with one of the displayed prize multipliers. When one of the prizes has been matched, the patron will receive the associated multiplier amount. The actual prize awarded to the patron will be the play level used to enter the bonus feature multiplied by the multiplier obtained during the bonus feature.

The *Lucky Fruit* game theme also contains a "Bonus Spin" feature. For the *Bonus Spin* feature to be initiated, three (3) "Bonus Spin" symbols must be successfully aligned on a pay line on the 3x3 grid. When the *Bonus Spin* feature is initiated, the patron is granted ten (10)

bonus spins which will play automatically. Upon completion of the bonus feature, the patron will be awarded the total prize amount that was revealed during the bonus.

The *Lucky Fruit* game theme offers the patron a "Next Puzzle" feature which will allow the patron to view the next game puzzle. Dependent upon the play level that the patron has selected, a different game puzzle will be displayed to the patron. The "Next Puzzle" feature will present the patron with an alternate display which will temporarily show the next game puzzle on the 3x3 grid.

### Pirates

The *Pirates* game theme contains a total of twelve (12) symbols based primarily upon a pirate theme. The *Pirates* game theme presents nine (9) icons, constructed in a 3x3 grid to the patron. The game theme allows the patron to select a play level, which determines the quantity of points that will be expended to play a game. As configured, the play levels for the game theme are available at 40, 80, 120, 160, 200, and 400 points per play.

The Pirates game theme contains three (3) different bonus features. To enter a bonus feature, three (3) matching "Bonus" symbols corresponding with a bonus feature must be successfully aligned on a pay line on the 3x3 grid. The "Multiplier Bonus" feature presents the patron with a "Prize Wheel" style bonus feature. The wheel displayed on the screen contains various multiplier values as well as "Collect" spaces which will collect the patron's prize and end the bonus feature. The patron must initiate the spin by touching the screen to begin the bonus feature. The wheel will spin and stop on a value displayed on the wheel. The multiplier values collected during the bonus feature will be tallied and used to calculate the total prize amount that will be awarded to the patron. The bonus feature will continue to allow the patron to spin the wheel until the "Collect" value is selected which will end the bonus feature.

The prize displayed on the screen, and presented to the patron is dependent on the patron's play level, a default 1x multiplier, and the multipliers obtained and tallied while participating in the bonus feature. For example, if the patron participates in the game using a play level of 200, enters the bonus feature, and obtains a x2 multiplier during the wheel spin prior to the bonus feature selecting the "Collect" space, the patron will be awarded a prize of 400 (**Play Level:** 200 x **Bonus Multiplier:** 1 x **Spin Tally:** x2 = 400). The bonus feature is merely an entertaining display and the patron's actions with the game theme have no control over the game outcome.

The *Pirates* game theme contains a "Gold Coin" bonus feature. To enter the bonus feature, three (3) "Bonus" symbols, which corresponds with the "Gold Coin" bonus, must be successfully aligned on a pay line on the 3x3 grid. After a winning "Gold Coin" configuration appears on the reels, the bonus feature will be initiated. The bonus feature presents the patron with a 4 X 4 array of "Gold Coin" icons. The patron must select from the gold coin icons, which reveal prize amounts, until the patron reveals a "Collect" symbol,

which ends the bonus feature. When the "Collect" symbol is revealed, the bonus feature will end and the prizes revealed during the bonus feature will be awarded to the patron.

The *Pirates* game theme also contains a "Bonus Spin" feature. For the *Bonus Spin* feature to be initiated, three (3) "Bonus Spin" *symbols*, which correspond with the "Bonus Spin" feature, must be successfully aligned on a pay line on the 3x3 grid. When the *Bonus Spin* feature is initiated, the patron is granted ten (10) bonus spins which will play automatically. Upon completion of the bonus feature, the patron will be awarded the total prize amount that was revealed during the bonus.

## Section IV - Features and Options

The *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663* offers several operator-selectable options and features. The options and features offered to the terminal operator are included in the "Operators Main Menu". There are several submenus in the "Operators Main Menu". The features and options available to the device operator are listed in the attached *Appendix A*.

## Section V - Review of Source Code

POM of VA, LLC has provided *Nick Farley & Associates, Inc.* with software source code associated with the *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663*. The review and evaluation of software source code is essential in establishing system operation and game outcome determination.

Our review of the source code indicates that the *Cutting EDGE Queen of Virginia Skill System* possesses a finite number of game outcomes for each game theme and play level. The game outcomes are randomly selected by a random number generator (RNG). Each time that the patron expends points to play a game, game outcomes are removed from the finite pool of available game outcomes. The patron's ability to correctly solve the puzzle by replacing the proper symbol with a *"Wild"* determines whether the patron will receive a prize for a successful outcome.

In addition, the system is designed to provide the player with a "Next Puzzle" feature, allows the patron to view the very next game puzzle by pressing the "Next Puzzle" icon on the video screen. At any given time prior to the initiation of a game, the patron may preview the next game puzzle. No payment or purchase is required for the participant to exercise the ability to cause the electronic system to disclose the next game puzzle for the game theme and play level selected. The player can then choose to either play for the outcome displayed or exit the game theme.

It was noted that the source code associated with this game is structured in such a way that it can accommodate a variety of different types of games. As compiled, the source code

*Nick Farley & Associates*
www.nfa777.com

reviewed only allows for the play of the *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663*. Please note that the operator of this game will not have access to the software program source code, and thus will not have the ability to change the way the game is played. Configuration of game play can only be done by POM of VA's software engineering team.

### Section VI - System Software Information and Identification

The software associated with operating the *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663* is housed on the storage media of the *Cutting EDGE Queen of Virginia Skill System*. The software housed on the storage media of the *Cutting EDGE Queen of Virginia Skill System* controls the game processes, including elements that affect win outcome integrity and win outcome determination. The *Cutting EDGE Queen of Virginia Skill System* software is installed using a bootable USB flash drive. A copy of the *Cutting EDGE Queen of Virginia Skill System* software was provided to Nick *Farley & Associates, Inc.* for review. Due to the design of the system software, two (2) methods of software verification were used to provide software signatures of the software.

The first method utilized to obtain software signatures was to verify the installation software prior to installation of the *Cutting EDGE Queen of Virginia Skill System*. This method ensures that the software being installed is the correct version of software. The second method utilized to obtain software signatures requires the assistance of POM of VA, LLC, to obtain elevated user access to the system software in order to obtain a copy of the software that has been installed onto the system. When a copy of the software has been obtained, software signatures can be taken of the copied software. This method verifies the software that is installed and running on the system. Please note that the second method of verifying the software will reset the finite pools on the system.

The software signatures for the files pertaining to system operation, integrity and/or game outcome determination for both methods have been listed in the attached *Appendix B*. In addition to the file names, a **FileCheck** signature has been included for each of the files for verification purposes. The **FileCheck** v1.01 program has been utilized to calculate a 32 bit cyclic redundancy check value (CRC32) by applying a mathematical formula to the contents of each file. This value is a unique "signature" for the non-volatile files examined (each distinct file in each directory in these instances). The previously mentioned **FileCheck** CRC32 values will be obtained provided the files contained on the directories remain the same as tested. Should these files be altered in any way, the **FileCheck** CRC32 values will change. A copy of the **FileCheck** CRC32 program may be obtained by contacting *Nick Farley & Associates, Inc.*

Note: Please contact POM of VA, LLC for instructions on how to obtain signatures for the software that operates the *Cutting EDGE Queen of Virginia Skill System*.

*Nick Farley & Associates*
www.nfa777.com

POM of VA, LLC - *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663* - Harbert
NA_PACE_3995-01_EW -- November 3, 2017
Page 11 of 15

## Section VII - Findings and Conclusion

The following questions were posed to us by legal counsel for POM of VA, LLC. Answers to these questions are based upon our review and analysis of the *Cutting EDGE Queen of Virginia Skill System*:

1. *Is a single "play" of the game defined as beginning with consideration and ending when the player cannot proceed without more consideration?*

   Yes. Each play or game is one event which starts with the initial activation of play until additional payment is required to play another game.

2. *Is it possible for the player to know prior to a commitment to play, the puzzle that will be presented in the next played game?*

   Yes. Each game theme contains a "Next Puzzle" feature which allows the patron to view the very next game puzzle by pressing the "Next Puzzle" icon on the video screen. At any given time prior to the initiation of a game, the patron may preview the next game puzzle.

3. *Can the next puzzle be viewed free of charge, without inserting any cash into the machine?*

   Yes. No payment or purchase is required for the patron to exercise the ability to cause the electronic system to disclose the next game puzzle for the game theme and play level selected.

4. *Does the system prevent an automatic win on every play?*

   Yes. During the review of the system, it was noted that the initial nine (9) icons displayed will not present an automatic winning combination. The patron must engage in the selection of a symbol to be chosen as "*Wild*" in order to align three like symbols on one or more lines of the game play area in order to obtain a winning game outcome. Additionally, it should be noted that not all plays initiated on the *Cutting EDGE Queen of Virginia Skill System* will have a potential winning outcome.

5. *Does the solving of the main game puzzle involve skill to attain any possible award?*

   It is our opinion that solving the main game puzzle requires the use of dexterity and hand eye coordination, thus requiring the use of skill by the patron to attain a possible award. The main game presents the patron with a 3x3 grid that will display symbols to the patron, similar to a "tic-tac-toe" arrangement. Once the patron initiates game play, the symbols in the 3x3 grid will spin and present the patron with a new set of symbols. The patron must then skillfully select which symbol in the 3x3 grid to replace with a "Wild" symbol. The patron may place the "Wild" symbol in any of the nine (9) spaces in the 3x3 grid.

*Nick Farley & Associates*
www.nfa777.com

POM of VA, LLC - *Cutting EDGE Queen of Virginia Skill System version SKL 503.06 VIR 1663* - Harbert
NA_PACE_3995-01_EW – November 3, 2017
Page 12 of 15

The object of the main game is for the patron to recognize the best winning game outcome and select the appropriate symbol to replace with a "*Wild*" symbol that will align three (3) like symbols on any line in the 3x3 grid. The patron must make this selection within the allotted time (30 seconds); failure to do so results in a losing outcome. The patron must make several decisions before attempting to solve the puzzle. Since the screen may display several winning combinations, the patron must decide which combination will yield the highest value winning prize. Additionally, the patron may wish to view the next puzzle and decide which combination will be the most advantageous.

6. *Is there a limited amount of time given to a player to solve a puzzle in the main game?*

   Yes. The main game requires the patron to complete the required task within the allotted thirty (30) second time limit.

7. *Does successfully solving a puzzle by lining up a row of like symbols in combination with a player-placed Wild symbol always produce a win value of some non-zero amount?*

   Yes. When the patron successfully completes the required task to align three (3) like symbols on the 3x3 grid, the patron will be awarded the corresponding prize for the aligned symbols.

8. *Can some puzzles be solved that result in a prize that is awarded in an extended entertaining manner like a series of "Bonus Spins" or a "Bonus round screen"?*

   Yes. Each game theme offered on the *Cutting EDGE Queen of Virginia Skill System* contains *Bonus* features, which award prizes in an extended entertaining manner. For details on the various Bonus features, refer to <u>Section III - Game Specific Information</u>.

9. *Can these extended award sequences be considered part of the same game play that awarded them?*

   Yes. Each extended award sequence (Bonus Feature) is considered part of the base game that awarded them. The extended award sequences do not require any additional consideration to play and they may only be triggered after successfully completing the main game.

10. *Can the mini-game of Follow Me be played any time the main game's puzzle provides a perfect play award less than 105% of the cost to play the game?*

    Yes. When the patron has correctly solved the puzzle and wins a prize that is less than 105% of the purchase price to play the game, the patron is afforded an option to

select the *"Follow Me"* bonus feature. The *"Follow Me"* bonus feature will provide the patron with an opportunity to win 105% of the initial purchase price to play the game.

11. *Does a player forfeit the ability to play Follow Me if a mistake results in less than perfect play in the main game puzzle solving phase?*

Yes. The patron will forfeit their opportunity to play the "Follow Me" feature if the patron does not select the "best" winning combination to solve the puzzle and to maximize the outcome.

12. *When Follow Me is made available, can it be played free of charge, without any additional consideration?*

Yes. When the patron has correctly solved the puzzle and wins a prize that is less than 105% of the purchase price to play the game, the patron is afforded an option to select the *"Follow Me"* bonus feature. The *"Follow Me"* feature does not require any additional consideration to enter.

13. *Does successfully completing a Follow Me session take 25 rounds?*

Yes. As configured, the patron will need to follow (repeat) the correct sequence for a total of twenty-five (25) rounds of play, until a total of twenty-five (25) sequences are successfully completed.

14. *Does successfully completing a Follow Me session result in a final game outcome value in excess of the cost to play?*

Yes. In the event that the *"Follow Me"* feature is successfully completed, the patron is assured a prize of 105% of the purchase price to play the game.

15. *Can it be stated that with the combination of perfect skill in the main game and successfully completing any Follow Me mini-game offered that every play can result in an award value in excess of the cost to play the game?*

Yes. It can be stated that with correctly solving the puzzle with the "best" winning combination and successfully completing any *"Follow Me"* feature offered, it is possible that every play can result in a prize 105% of the purchase price to play the game.

Based upon our review and analysis of the *Cutting EDGE Queen of Virginia Skill System*, we have determined that the game outcome is based upon the patron's ability to select the appropriate symbol to replace with a *"Wild"* symbol in order to attain the highest value winning combination as a game play result. The patron must also select between several potential winning combinations. The patron must work quickly, as game play is dependent

*Nick Farley & Associates*
www.nfa777.com

upon a time limitation. Additionally, the patron may receive a "Bonus Feature" or "Follow Me" features where additional points may be awarded.

Additionally, the system is designed to provide the player with a "Next Puzzle" feature, which allows the patron to view the very next game puzzle by pressing the "Next Puzzle" icon on the video screen. At any given time prior to the initiation of a game, the patron may preview the next game puzzle. No payment or purchase is required for the participant to exercise the ability to cause the electronic system to disclose the next game puzzle for the game theme and play level selected.

We have determined that the "Next Puzzle" game outcome is based upon finite pools of game outcomes. Each game theme offered on the *Cutting EDGE System* distributes game outcomes from finite pools by way of a random number generator (RNG). Points are expended to use game outcomes from the finite pools based upon the player's selected game theme and play level. The finite pools of game outcomes are generated by the *Cutting EDGE System* and are randomly delivered to the customer.

The RNG selects an initial game outcome and selects the next game outcome. As the game outcomes are used the RNG continues to select the next game outcome ensuring that there is always a next game outcome for the player to view. After each game outcome is used, the "Next Puzzle" game outcome becomes the current game outcome, and a new "Next Puzzle" game outcome is selected and available to be viewed by the player.

### Section VIII – Terms and Conditions

It is hereby expressed that *Nick Farley & Associates, Inc.* has reviewed the submitted game system through the engagement of play of the game themes, and analysis of the submitted software program source code. *Nick Farley & Associates, Inc.* has performed extensive research and analysis to determine the findings and conclusions of fact presented in this document. Our findings and conclusions are based exclusively on the information provided for our review. Any changes or modification of the information provided will require additional review to determine if they support the findings and conclusions of this report. In such an instance, we reserve the right to amend or revise this document.

This document has been prepared by *Nick Farley & Associates, Inc.* for Mr. Guy M. Harbert III of Gentry Locke Attorneys for the benefit of POM of VA, LLC. Distribution of this document is limited exclusively to *Nick Farley & Associates, Inc.*, Mr. Guy M. Harbert III, and POM of VA, LLC. This report shall not be reproduced, except in full, without the written approval of *Nick Farley & Associates, Inc.* Only authorized copies of this report received from *Nick Farley & Associates, Inc.* are considered to be authentic. Upon request by an authorized party, *Nick Farley & Associates, Inc.* will send this report via email as directed. *Nick Farley & Associates, Inc.* takes precautionary measures to secure the PDF

document, but *Nick Farley & Associates, Inc.* does not send the email via any encrypted methodology.

Given that there are no specific state regulatory specifications available for systems of this nature; this document is NOT intended to express any opinion as to whether this system is authorized under any specific state law. This document, in no way, warrants the operation of this system.

If you should have any questions or require additional information, please feel free to contact our office.

Sincerely,

Nick Farley
*President*

NF/sc
NA_PACE_3995-01_EW
Attachments

# EXHIBIT C



# COMMONWEALTH of VIRGINIA

## Department of Alcoholic Beverage Control

COMMISSIONERS
JEFFREY L. PAINTER, CHAIRMAN
JUDITH G. NAPIER
HENRY L. MARSH, III

2901 HERMITAGE ROAD
P. O. BOX 27491
RICHMOND, VIRGINIA 23261
(804) 213-4400
FAX: (804) 213-4411
www.abc.virginia.gov

CHIEF OPERATING OFFICER/SECRETARY TO THE BOARD
TRAVIS G. HILL

July 7, 2017

*VIA ELECTRONIC MAIL*
Jeffrey L. McGinness
Pace-O-Matic
4150 Blue Ridge Industrial Pkwy
Norcross, Ga. 30071

Dear Mr. McGinness,

Thank you for your recent inquiry concerning the propriety of alcoholic beverage licensed establishments in Virginia utilizing electronic games developed by Pace-O-Matic. As we discussed, this game is currently being widely used in Pennsylvania (including establishments with alcoholic beverage licenses) and has been found to be a game of skill by the Court of Common Pleas of Beaver County, Pennsylvania.

We have thoroughly reviewed the documents forwarded concerning the Court's finding in Pennsylvania and the letter of Mr. Guy M. Harbet, III of Gentry Locke. Additionally, we have asked our Virginia Office of Attorney General to review these documents, as well as any case law of precedential value in Virginia that might be of significance in reaching a determination in this matter.

After weighing these various pieces of information, we have concluded that this game appears to be predominately a game of skill. While two of the factors in the definition of illegal gambling are present - (1) placing a bet or wage, and 2) the opportunity to win a prize, we don't think the element of chance is a predominant factor in winning a prize in this game. It is apparent that there is a significant element of skill involved in all three games as presented to us.

The" tic-tac-toe" game (while it has a random number generator to determine the puzzle) depends on the player's ability to spot the pattern and determine the best place to put the "wild" to enhance his/her chances of a higher score. The court in Pennsylvania indicated that each puzzle has the ability to win and a player's skill, which includes the ability to recognize the most advantageous spots to play, will result in a higher score.

The shooter game involves manual dexterity and hand eye coordination and the "follow me" game

involves memory. I think these three elements 1) pattern recognition, 2) hand-eye coordination, and 3) memory are sufficient to say that skill is the predominant factor in the game rather than chance. Accordingly, The Virginia Department of Alcoholic Beverage Control will not consider these machines, in their current configuration and intended use, to be gambling devices and no administrative charges will be initiated against any licensee which utilizes the machines on their premises.

I would like to stress that this determination is limited to the aforementioned circumstances and impacts only potential administrative charges that may be initiated by Virginia ABC. This decision is obviously not binding on the multitude of other agencies or elected officials that may have jurisdiction in this arena and reach a different conclusion than that cited above.

If you have any questions, please do not hesitate to give me a call at 804-213-4569.

Sincerely,

*Thomas W Kirby*

Thomas W. Kirby
Deputy Chief

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF CHARLOTTESVILLE

### In re: Application to the Circuit Court to Assign Counsel for the Commonwealth's Attorney for the City of Charlottesville

COMES NOW, Joseph D. Platania, in his capacity as Commonwealth's Attorney for the City of Charlottesville, who has been made a defendant in a civil action filed in the Charlottesville Circuit Court, *Queen of Virginia Skill & Entertainment, POM of Virginia, and Miele Manufacturing, Inc, v. Joseph D. Platania, in his official capacity as Commonwealth's Attorney for the City of Charlottesville*, Case No. CL19000324-00, wherein the allegations are arising out of the performance of his official duties and there is no legal defense provided under the insurance coverage of the Office of the Commonwealth's Attorney. Pursuant to Virginia Code §15.2-1606, and for good cause, Joseph D. Platania, Commonwealth's Attorney, makes application to this Circuit Court to assign counsel for his defense in this action.

This Court, finding good cause, ORDERS David Corrigan, Esquire and the law firm of Harman, Claytor, Corrigan & Wellman, P.C., to represent Joseph D. Platania, in the abovementioned civil action, and requests counsel provide an itemized expense for compensation.

DATE: 7 / 16 / 19

_____

The Honorable Humes J Franklin
Judge

EXHIBIT

B

I ask for this:

Joseph Platania
Commonwealth's Attorney
City of Charlottesville

**ACCEPTANCE/WAIVER OF SERVICE OF PROCESS AND
WAIVER OF FUTURE SERVICE OF PROCESS
AND NOTICE**

Case No. ........540CL19000324-00.........

COMMONWEALTH OF VIRGINIA    VA. CODE §§ 8.01-327; 20-99.1:1; Rules 3:5, 3:8

.................................Charlottesville................................................................................................................. Circuit Court

...Queen of Virginia Skill & Entertainment, LLC, et al...    v.    .......Joseph D. Platania, in his official capacity........
PLAINTIFF                         DEFENDANT

I, the undersigned party named below, swear under oath/affirm the following:

1.  I am a party [ ] plaintiff  [X] defendant in the above-styled suit.

2.  I have received a copy of the following documents on this date:

    [ ] Complaint

        [ ] filed on .............................................................................................................................................., attached
DATE

        [ ] pre-filing copy pursuant to Va. Code § 20-99.1:1(A), attached

    [X] Summons with copy of Complaint filed on .............................June 28, 2019........................................., attached
DATE

    [ ] Other – Describe: ................................................................................................... filed on ..................................................
DATE

I understand that my receipt of these copies and my signature below constitute

    [ ] the acceptance of service of process of these copies, or

    [X] a waiver of service of process and notice which may be prescribed by law.

3.  I agree to voluntarily and freely waive any future service of process and notice as checked below in this case:

    [X] a.  the 21-day time period for filing a responsive pleading.

    [ ] b.  any further service of process.

    [ ] c.  notice of the appointment of a commissioner in chancery and hearings held by such commissioner in chancery, if a commissioner in chancery is appointed.

    [ ] d.  notice of the taking of depositions.

    [ ] e.  notice of the filing of any reports by a commissioner in chancery of the filing of depositions.

    [ ] f.  notice of testimony to be given orally in open court.

    [ ] g.  notice of entry of any order, judgment or decree, including the final decree of divorce.

I understand that, by waiving service of process and notice, I am giving-up my right to be notified of the events where indicated above.

**EXHIBIT
C**

....9/17/2019.................                   ..........David [signature]......., counsel for defendant........
DATE                                    [•] DEFENDANT    [ ] PLAINTIFF

**TO DEFENDANT:** Notify the Court in writing of any changes of your address while this case is pending.

State/Commonwealth of .....Virginia................................, [ ] City [X] County of ...Henrico...................

Subscribed and sworn to/affirmed before me this .....17th..... day of .....September........., 20 19

by ....David P. Corrigan, Esq. (counsel for defendant).....
PRINT NAME OF AFFIANT

....9/17/19.............                        ....Amber H. Goff [signature]......
DATE                                 [ ] CLERK    [ ] DEPUTY CLERK
                                              [X] NOTARY PUBLIC (My commission expires .May 3, 2020.)
                                              Registration No. ...333666...................

FORM CC-1406 MASTER 07/19

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF CHARLOTTESVILLE

QUEEN OF VIRGINIA SKILL AND
ENTERTAINMENT, LLC, POM OF
VIRGINIA, LLC, AND MIELE
MANUFACTURING, INC.,

    Plaintiff,

v.                            Case No. CL19000324-00

JOSEPH D. PLATANIA, IN HIS OFFICIAL
CAPACITY AS COMMONWEALTH'S
ATTORNEY FOR THE CITY OF
CHARLOTTESVILLE,

    Defendant.

### DEMURRER TO COMPLAINT

NOW COMES the Defendant Joseph D. Platania, in his official capacity as Commonwealth's Attorney for the City of Charlottesville ("Platania"), by counsel, pursuant to Section 8.01-273 of the *Code of Virginia*, and avers the Complaint fails to state a cause of action against him, and fails to state facts sufficient to support a cause of action against him for the following reasons:

1.    Plaintiffs offer electronic console games to bars and convenience stores in the Commonwealth of Virginia. These games are known as "Queen of Virginia Skill & Entertainment" games. Despite the name, Plaintiffs' games have aspects similar to slot machines that allow players to insert and either win or lose money. As such, Platania determined that probable cause exists that Plaintiffs' games may be gambling devices which violate Va. Code §§ 18.2-325 and 331 (herein after, "Virginia gambling statutes"). Platania advised the locations in Charlottesville that housed Plaintiffs' game terminals that they would risk prosecution for a

**EXHIBIT
D**

Class I Misdemeanor if the games remained on their premises after August 5, 2019. To the best of Platania's knowledge, the locations complied and removed the games. Plaintiffs now bring suit in an effort to interfere with Platania's prosecutorial discretion, even though they themselves were not subject to prosecution. In Count I of the Complaint, Plaintiffs seek declaratory judgment under the Fourteenth Amendment and the Virginia Constitution and ask this Court to declare their game is not an illegal gambling device. In Count II, Plaintiffs bring suit under 42 U.S. § 1983 and allege their Fourteenth Amendment Due Process rights were violated. In Count III, Plaintiffs seek a writ of prohibition against Platania. In Count IV, Plaintiffs seek a temporary and permanent injunction. Plaintiffs' claims are largely duplicative of one another and all seek the same relief: judicial interference with the business of the Commonwealth's Attorney. All of Plaintiffs' claims should be dismissed.

## NO JUSTICIABLE CONTROVERSY

2.    The Complaint fails to present a justiciable controversy, thereby rendering the court without jurisdiction. Plaintiffs seek a determination regarding the application of the Virginia gambling statutes to their game. Specifically, Plaintiffs seek a declaration their game does not constitute illegal gambling under Va. Code § 18.2-325 and that the game is not an illegal gambling device under Va. Code § 18.2-331. As such, Plaintiffs' objective in the declaratory judgment count is to seek a determination of a disputed issue rather than an adjudication of their rights. This is improper for at least three reasons. First, Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty. Board of Supervisors, 285 Va. 87, 99 (2013); and Daniels v. Mobley, 285 Va. 402 (2013) hold that there was no justiciable controversy where a plaintiff sought a declaration that a Texas Hold 'Em poker game did not violate Va. Code § 18.2-325, because that plaintiff's request concerned a determination of a

2

disputed issue rather than a request for adjudication of rights. Second, Plaintiffs' request for a declaration that its game does not constitute illegal gambling concerns the interpretation of a criminal statute. Declaratory relief is inappropriate to restrain a Commonwealth's Attorney in criminal matters. Daniels, 285 Va. at 899-900. Third, granting Plaintiffs' requested declaration concerning the legality of its game would amount to an improper advisory opinion. Daniels, 285 Va. at 900.

<u>NO STANDING</u>

3.     Plaintiffs also have no standing to seek a remedy under the Fourteenth Amendment and the Constitution of Virginia. Plaintiffs claim Virginia's gambling statutes are unconstitutionally vague, because they invite arbitrary and selective enforcement. This is a facial challenge based on due process overbreadth, and Plaintiffs have no standing to make a facial attack upon a penal statute on that basis. See Daniels v. Mobley, 285 Va. 402, 904 (McClanahan concurring, citing Stanley v. City of Norfolk, 218 Va. 504 (1977)). Plaintiffs would only have standing to challenge criminal statutes as applied to them. Id. However, because Plaintiffs have not been convicted or cited for a violation of any criminal statute by Defendant, Plaintiffs do not have standing to make an "as-applied" challenge to the gambling statutes. See e.g., Tanner v. City of Va. Beach, 277 Va. 432 (2009).

<u>NO CONSTITUTIONALLY PROTECTED RIGHT</u>

4.     Even if Plaintiffs had standing to pursue a claim under the Fourteenth Amendment, it is well-settled that gambling does not implicate a constitutionally protected right. United States v. Edge Broad Co., 509 U.S. 418, 426 (1993). As such, Plaintiffs' due process challenge fails as a matter of law. See e.g., Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489 (1982) (requiring courts to first determine whether a statute

3

implicates a substantial amount of constitutionally protected conduct when considering a facial challenge under the Due Process Clause). Plaintiffs' claims also fail since Virginia's gambling statutes are not impermissibly vague in all of their applications. Hoffman, 455 at 495; Martin v. Lloyd, 700 F.3d 132 (holding South Carolina statute prohibiting gambling devices "pertaining to games of chance" had a plainly legitimate sweep and more than conceivable application rendering it facially valid). Moreover, the possibility of a difference of opinion amongst law enforcement concerning the application of the gambling statutes to Plaintiffs' game does not establish unconstitutional vagueness in violation of the Due Process Clause. Martin, 700 F.3d at 137.

## STATE SOVEREIGN IMMUNITY

5.   Platania has sovereign immunity for Plaintiffs' claims under Virginia law. Platania has been sued in his official capacity as an attorney for the Commonwealth. Platania is a constitutional officer whose duties are prescribed by law. Va. Const. art. VII, § 4; Doud v. Commonwealth, 282 Va. 317, 321 (2011). As such, the immunity of the Commonwealth extends to Platania, and Platania is immune from actions such as the one at bar which seek to restrain governmental action. Afzall v. Commonwealth, 273 Va. 226, 231 (2007).

## ABSOLUTE IMMUNITY

6.   Platania is also entitled to absolute immunity from Plaintiff's claims under either federal or state law. See Vosburg v. Department of Social Services, 884 F.2d 133 (4th Cir. 1989); Sprigmen v. Williams, 122 F.3d 211, 212-13 (4th Cir. 1997) (holding that the doctrine of absolute immunity squarely covers a prosecutor's decision to go forward with a prosecution). Where a prosecutor is acting within the scope of his duties and is involved with the charging process under Virginia law, his actions are intimately connected with the lawyer's role in judicial

4

proceedings. See e.g., Imbler v. Pachtman, 424 U.S. 409 (1976). Thus, the lawyer is entitled to absolute immunity from suit for his actions. Andrews v. Ring, 266 Va. 311, 585 S.E.2d 780 (2003). The same rule applies under state and federal law. Hunter v. Virginia State Bar, 786 F. Supp. 2d 1107, 1112 (E.D. Va. 2011); Imbler v. Pachtman, 424 U.S. 409 (1976).

## NOT A PROPER WRIT OF PROHIBITION

7.      Plaintiffs also cannot seek a writ of prohibition against Platania under Virginia law since such writs apply only to inferior courts, and Platania is not a judge. Goodrich v. Commonwealth, 210 Va. 295, 295, 171 S.E.2d 256, 256–57 (1969). Under Virginia law, the purpose of the writ of prohibition is "to restrain an inferior court from acting in a matter of which it has no jurisdiction, or in which it is transcending the bounds of its jurisdiction." Moss v. Barham, 94 Va. 12, 26 S.E. 388, 388–89 (1896); In re Vauter, 292 Va. 761, 768 (2016) (A writ of "[p]rohibition is an extraordinary remedy issued by a superior court to prevent an inferior court from exercising jurisdiction over matters not within its cognizance where damage or injustice is likely to follow from such action."). A writ of prohibition "is a remedy provided by the common law to redress the grievance growing out of an encroachment of jurisdiction, and issues properly out of a superior court to an inferior court, commanding them to cease from the prosecution of a suit, upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court." In re Vauter, 292 Va. at 768 (citing James v. Stokes, 77 Va. 225, 229 (1883)). Platania is not a judge, and Plaintiffs cannot pursue a remedy that encroaches on Platania's authority to prosecute criminal matters. Daniels, 285 Va. at 900; see also Va. Code § 15.2-1627(B) (vesting Commonwealth's Attorneys with authority to prosecute felonies and misdemeanors). Regardless, a writ of prohibition cannot be entertained without a proceeding already pending in

5

an inferior court.  See Goodrich v. Commonwealth 210 Va. 295 (1969) (writ of prohibition denied where no proceeding had been instituted against the petitioner).  Because there is no underlying criminal matter that has commenced, a writ of prohibition cannot possibly issue.

8.    Finally, Plaintiffs cannot prevail on their claims for a temporary and/or permanent injunction.  For the reasons stated above, Plaintiffs are not likely to succeed on the merits.  This alone defeats their request for injunctive relief.

9.    Platania will file a brief in support of this Demurrer in accordance with an agreed upon briefing schedule, and hereby incorporates his brief in support of the Demurrer as if fully set forth herein.

WHEREFORE, for the foregoing reasons, Plaintiffs have failed to state a claim, or allege sufficient facts to support a claim, against Joseph D. Platania in his official capacity as Commonwealth's Attorney for the City of Charlottesville, this Demurrer should be sustained, and this action dismissed with prejudice.

JOSEPH D. PLATANIA, IN HIS
OFFICIAL CAPACITY AS
COMMONWEALTH'S ATTORNEY
FOR THE CITY OF
CHARLOTTESVILLE

By Counsel

David P. Corrigan (VSB No. 26341)
Jeremy D. Capps (VSB No. 43909)
M. Scott Fisher, Jr. (VSB No. 78485)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com

6

## CERTIFICATE

I hereby certify that a true copy of the foregoing was emailed and mailed this ___ day of October, 2019 to:

> Anthony F. Troy, Esq. (VSB No. 05985)
> Eckert Seamans Cherin & Mellott, LLC
> SunTrust Center
> 919 East Main Street, Suite 1300
> Richmond, VA 23219
> 804-788-7740 - Phone
> 804-788-7751 - DD
> 804-698-2950 - Fax
> ttroy@eckertseamans.com
>
> Jason C. Hicks, Esq. (VSB No. 46961)
> Ian R. Dickinson, Esq. (VSB No. 92736)
> Womble Bond Dickinson US, LLP
> 201 E. Main Street
> Suite P
> Charlottesville, VA 22902
> 202-857-4536 - Phone
> 202-261-0013 - Fax
> Jason.Hicks@wbd-us.com
> Ian.Dickinson@wbd-us.com

David P. Corrigan

7

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF CHARLOTTESVILLE

QUEEN OF VIRGINIA SKILL AND
ENTERTAINMENT, LLC, POM OF
VIRGINIA, LLC, AND MIELE
MANUFACTURING, INC.,

    Plaintiff,

v.                                                    Case No. CL19000324-00

JOSEPH D. PLATANIA, IN HIS OFFICIAL
CAPACITY AS COMMONWEALTH'S
ATTORNEY FOR THE CITY OF
CHARLOTTESVILLE,

    Defendant.

## SPECIAL PLEA OF IMMUNITY

NOW COMES the Defendant Joseph D. Platania, in his official capacity as Commonwealth's Attorney for the City of Charlottesville ("Platania"), by counsel, and avers he is entitled to sovereign immunity and absolute immunity from Plaintiffs' claims for the following reasons:

1.     Plaintiffs offer electronic console games to bars and convenience stores in the Commonwealth of Virginia. These games are known as "Queen of Virginia Skill & Entertainment" games. Despite the name, Plaintiffs' games have aspects similar to slot machines that allow players to insert and either win or lose money. As such, Platania determined that probable cause exists that Plaintiffs' games may be gambling devices which violate Va. Code §§ 18.2-325 and 331 (herein after, "Virginia gambling statutes"). Platania advised the locations in Charlottesville that housed Plaintiffs' game terminals that they would risk prosecution for a Class I Misdemeanor if the games remained on their premises after August 5, 2019. To the best

**EXHIBIT**

E

of Platania's knowledge, the locations complied and removed the games. Plaintiffs now bring suit in an effort to interfere with Platania's prosecutorial discretion, even though they themselves were not subject to prosecution. In Count I of the Complaint, Plaintiffs seek declaratory judgment under the Fourteenth Amendment and the Virginia Constitution and ask this Court to declare their game is not an illegal gambling device. In Count II, Plaintiffs bring suit under 42 U.S. § 1983 and allege their Fourteenth Amendment Due Process rights were violated. In Count III, Plaintiffs seek a writ of prohibition against Platania. In Count IV, Plaintiffs seek a temporary and permanent injunction. Plaintiffs' claims are largely duplicative of one another and all seek the same relief: judicial interference with the business of the Commonwealth's Attorney. All of Plaintiffs' claims should be dismissed.

2.    Platania has sovereign immunity for Plaintiffs' claims under Virginia law. Platania has been sued in his official capacity as an attorney for the Commonwealth. Platania is a constitutional officer whose duties are prescribed by law. Va. Const. art. VII, § 4; Doud v. Commonwealth, 282 Va. 317, 321 (2011). As such, the immunity of the Commonwealth extends to Platania, and Platania is immune from actions such as the one at bar which seek to restrain governmental action. Afzall v. Commonwealth, 273 Va. 226, 231 (2007).

3.    Platania is also entitled to absolute immunity from Plaintiff's claims under either federal or state law. See Vosburg v. Department of Social Services, 884 F.2d 133 (4th Cir. 1989); Sprigmen v. Williams, 122 F.3d 211, 212-13 (4th Cir. 1997) (holding that the doctrine of absolute immunity squarely covers a prosecutor's decision to go forward with a prosecution). Where a prosecutor is acting within the scope of his duties and is involved with the charging process under Virginia law, his actions are intimately connected with the lawyer's role in judicial proceedings. See e.g., Imbler v. Pachtman, 424 U.S. 409 (1976). Thus, the lawyer is entitled to

2

absolute immunity from suit for his actions.  Andrews v. Ring, 266 Va. 311, 585 S.E.2d 780 (2003).  The same rule applies under state and federal law.  Hunter v. Virginia State Bar, 786 F. Supp. 2d 1107, 1112 (E.D. Va. 2011); Imbler v. Pachtman, 424 U.S. 409 (1976).

4.    Platania will file a brief in support of this Special Plea of Immunity in accordance with an agreed upon briefing schedule, and hereby incorporates his brief in support of the Special Plea of Immunity as if fully set forth herein.

WHEREFORE, for the foregoing reasons, this Special Plea of Immunity on behalf of Joseph D. Platania, in his official capacity as Commonwealth's Attorney for the City of Charlottesville, should be sustained, and the Complaint should be dismissed with prejudice.

JOSEPH D. PLATANIA, IN HIS OFFICIAL CAPACITY AS COMMONWEALTH'S ATTORNEY FOR THE CITY OF CHARLOTTESVILLE

By Counsel

David P. Corrigan (VSB No. 26341)
Jeremy D. Capps (VSB No. 43909)
M. Scott Fisher, Jr. (VSB No. 78485)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com

3

# CERTIFICATE

I hereby certify that a true copy of the foregoing was emailed and mailed this 8th day of October, 2019 to:

Anthony F. Troy, Esq. (VSB No. 05985)
Eckert Seamans Cherin & Mellott, LLC
SunTrust Center
919 East Main Street, Suite 1300
Richmond, VA 23219
804-788-7740 - Phone
804-788-7751 - DD
804-698-2950 - Fax
ttroy@eckertseamans.com

Jason C. Hicks, Esq. (VSB No. 46961)
Ian R. Dickinson, Esq. (VSB No. 92736)
Womble Bond Dickinson US, LLP
201 E. Main Street
Suite P
Charlottesville, VA 22902
202-857-4536 - Phone
202-261-0013 - Fax
Jason.Hicks@wbd-us.com
Ian.Dickinson@wbd-us.com

David P. Corrigan

4