IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

QUEEN OF VIRGINIA SKILL &
ENTERTAINMENT, LLC,
POM OF VIRGINIA, LLC, AND
MIELE MANUFACTURING, INC.

    Plaintiffs,

v.                              Civil Action No. 3:19-cv-00065

JOSEPH D. PLATANIA, IN HIS OFFICIAL
CAPACITY AS COMMONWEALTH'S
ATTORNEY FOR THE CITY OF
CHARLOTTESVILLE,

    Defendant.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

## I.      INTRODUCTION[1]

    Plaintiff Queen of Virginia Skill & Entertainment, LLC ("Queen of Virginia") owns and

distributes the terminal and game known as Queen of Virginia Skill & Entertainment ("Game").

Plaintiff POM of Virginia, LLC ("POM") licenses to Queen of Virginia the software that

comprises the Game.  Plaintiff Miele Manufacturing, Inc. ("Miele") manufactures and sells the

hardware (game terminal, cabinet, electronics, screen, etc.) that comprise the Game.

---

[1] This matter was originally filed in the Circuit Court for the City of Charlottesville.  Platania timely filed a Demurrer and Special Plea of Immunity before the case was removed to this Court. [ECF Docs. 1-5 and 1-6].  Pursuant to Rule 81(c)(2) of the Federal Rules of Civil Procedure, the Demurrer and Special Plea of Immunity filed in state court are the federal equivalent to a Motion to Dismiss for Failure to State a Claim under Rules 12(b)(1) and (6), and re-pleading is not necessary.  Fed. R. Civ. P. 81(c)(2); see also Nelson v. Shockley, No. 2:18CV00025, 2019 WL 2375144, at *1 (W.D. Va. June 5, 2019) ("Accordingly, after removal, the demurrer filed in state court will be treated as the federal equivalent — a motion to dismiss for failure to state a claim."); McCray v. Ardelle Assoc. Inc., No. 4:14 cv 158, 2015 WL 3886318, at *3 (E.D. Va. June 23, 2015).

Despite the name, Plaintiffs' games are similar to slot machines and allow players to gamble and win money. As such, Defendant Joseph D. Platania, in his Official Capacity as Commonwealth's Attorney for the City of Charlottesville ("Platania"), determined Plaintiffs' games are gambling devices which violate Va. Code §§ 18.2-325 and 331 (herein after, "Virginia gambling statutes"). Platania then advised Charlottesville convenience stores, restaurants, and bars housing Plaintiffs' game terminals that they would risk prosecution for a Class I Misdemeanor if the games remained on their premises after July 7, 2019.

Plaintiffs now bring suit in an effort to interfere with Platania's prosecutorial discretion even though they themselves were not subject to prosecution. In Count I of the Complaint, Plaintiffs seek declaratory judgment under the Fourteenth Amendment of the United States Constitution and Article I, Section 11 of the Virginia Constitution and ask this Court to declare their game is not an illegal gambling device. In Count II, Plaintiffs bring suit under 42 U.S. § 1983 and allege their Fourteenth Amendment Due Process rights were violated. In Count III, Plaintiffs seek a writ of prohibition against Platania. In Count IV, Plaintiffs seek temporary and permanent injunctions. Plaintiffs' claims are largely duplicative of one another and all seek the same relief: judicial interference with the business of the Commonwealth's Attorney. Plaintiffs, however, cannot sustain any of their claims.

As an initial matter, the Complaint fails to present a justiciable controversy; therefore, this Court is without jurisdiction. Moreover, Plaintiffs' request for a declaration that their Game does not constitute illegal gambling concerns the interpretation of a criminal statute, and declaratory relief is inappropriate to restrain a Commonwealth's Attorney in criminal matters.

Regardless, Plaintiffs' Due Process rights have not been violated. Plaintiffs do not have property rights in their gambling devices. They also do not have standing to pursue a "void for

2

vagueness claim" under the Due Process Clause. Notwithstanding those issues, the Virginia gambling statutes are not void for vagueness as a matter of law.

Plaintiffs also cannot seek a writ of prohibition against Platania under Virginia, because no writ can issue that would encroach on Platania's authority to prosecute criminal matters and, in any event, there is no underlying criminal matter that has commenced which could even be the subject of a writ of prohibition.

Platania is also entitled to absolute immunity as a prosecutor, and Platania has sovereign immunity for Plaintiffs' claims under Virginia law. Plaintiffs simply cannot prevent Platania from acting as a prosecutor.

Finally, Plaintiffs cannot prevail on their claims for temporary and/or permanent injunctions. For the foregoing reasons and all other reasons stated herein, Plaintiffs are not likely to succeed on the merits. This alone defeats their request for injunctive relief, but Plaintiffs also cannot succeed under the other three prongs needed for injunctive relief.

In sum, Plaintiffs should not be permitted to use the civil litigation process to curtail Platania's authority as a duly elected prosecutor under Virginia law. This action seems to be nothing more than an attempt to subvert the criminal process – one that has yet to unfold as it relates to Plaintiffs or their Game – and it should not be allowed to proceed.

## II.  ALLEGATIONS[2]

Plaintiffs manufacture, distribute, and maintain the Game, which comes either as a table-top device or a standalone cabinet. [Complaint at ¶ 10]. Plaintiffs contract with retail locations

---

[2] For purposes of this Motion to Dismiss, Platania, as he must, accepts the allegations contained in Plaintiffs' Complaint as true; however, Platania does not concede any of those allegations and reserves the right to rebut those allegations should this Motion to Dismiss be denied.

3

that house the Game in Virginia Department of Alcoholic Beverage Control ("ABC") licensed restaurants, bars, and convenience stores. Id. at ¶ 1.

The Game is a tic-tac-toe style puzzle "in which the game spins nine reels in a 3x3 grid. When the reels stop spinning, the player has thirty seconds to select which of the nine cells should be changed to a wild symbol to create a chain of three identical symbols, either horizontally, vertically, or diagonally. The goal is to place the wild symbol in a cell to create at least one chain of three like symbols, as in tic-tac-toe." Id. at ¶ 11. Plaintiffs allege "[t]he game will never generate a puzzle in which the player automatically wins without selecting a wild symbol for the correct spot in the grid." Id. at ¶ 14. Instead, Plaintiffs contend skill, rather than pure chance, is required to win. Id. at ¶¶ 12-21. Winners are "paid out in credits, with one credit representing one cent." Id. at ¶ 19. "At any point, the player can redeem the credits won by utilizing the ticket printer on the machine and exchanging the ticket for cash at the location." Id.

Before introducing the Game in Virginia, Plaintiffs claim they submitted the Game to the law firm Gentry Locke for legal review in 2016. Id. at ¶ 23. Gentry Locke concluded the Game was not an illegal gambling device. Id. Plaintiffs also claim they submitted the Game's software for "third party review and analysis, which also concluded that it was a skill game in which chance did not predominantly determine the likelihood of success." Id.

Plaintiffs also submitted an inquiry to ABC in 2017 seeking guidance on whether ABC would treat the Game as an illegal gambling device. On July 7, 2017, ABC provided Plaintiffs a letter, opining "we don't think the element of chance is a predominant factor in winning a prize in this game. It is apparent that there is a significant element of skill involved." Id. at ¶ 26. Significantly, the letter from ABC also made the following admonition:

I would like to stress that this determination is limited to the aforementioned circumstances and impacts only potential administrative charges that may be initiated by Virginia ABC. This decision is obviously not binding on the multitude of other agencies or elected officials that may have jurisdiction in this arena and reach a different conclusion than that cited above.

[Exhibit C to the Complaint at p. 2].

Following receipt of the ABC's letter, Plaintiffs introduced the Game into ABC-licensed establishments in Virginia. [Complaint at ¶ 29.] As they began to introduce the Game to establishments throughout Virginia, Plaintiffs met with numerous Commonwealth's Attorneys. Id. at ¶ 33. Plaintiffs aver they met with Dave Chapman ("Chapman"), the former Commonwealth's Attorney for the City of Charlottesville whom they allege "had no issue with the Game." Id.

In January 2018, Platania replaced Chapman as the Commonwealth's Attorney for Charlottesville. Id. at ¶ 36. In May 2019, Platania allegedly began receiving "political pressure" to "do something" about the Game, which citizens believed was a "slot machine." Id. at ¶¶ 37-40. On June 7, 2019, Platania issued a press release indicating he had "made the determination that these 'Queen of Virginia' machines are gambling devices and therefore violate Virginia law." Id. at ¶ 40. Platania then advised retail locations in Charlottesville housing the Game that they must remove the Game from their premises no later than July 7, 2019 or otherwise face prosecution for a Class I Misdemeanor. Id. at ¶ 41.

Platania's press release indicated his decision was based on a review of Va. Code §§ 18.2-325 and 331. Id. at 45.

Section 18.2-325 provides in relevant part:

1. "Illegal gambling" means the making, placing or receipt of any bet or wager in the Commonwealth of money or other thing of value, made in exchange for a chance to win a prize, stake or other consideration or thing of value, dependent upon the result of any game, contest or any other event the outcome of which is

5

uncertain or a matter of chance, whether such game, contest or event occurs or is to occur inside or outside the limits of the Commonwealth.

. . .

3. "Gambling device" includes:

a. Any device, machine, paraphernalia, equipment, or other thing, including books, records and other papers, which are actually used in an illegal gambling operation or activity, and

b. Any machine, apparatus, implement, instrument, contrivance, board or other thing, or electronic or video versions thereof, including but not limited to those dependent upon the insertion of a coin or other object for their operation, which operates, either completely automatically or with the aid of some physical act by the player or operator, in such a manner that, depending upon elements of chance, it may eject something of value or determine the prize or other thing of value to which the player is entitled . . .

(emphasis added).

Va. Code § 18.2-331 provides:

A person is guilty of illegal possession of a gambling device when he manufactures, sells, transports, rents, gives away, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of any gambling device, believing or having reason to believe that the same is to be used in the advancement of unlawful gambling activity. Violation of any provision of this section shall constitute a Class 1 misdemeanor.

Retailers in Charlottesville no longer operate the Game in their establishments "because of Defendants' 'determination.'" Id. at ¶ 51.

## III.   LAW AND ARGUMENT

### A.   Standard of Review.

#### 1.   Rule 12(b)(1)

Plaintiffs have not presented a jusiticiable controversy which renders this Court without jurisdiction.  See e.g. Sigram Schindler Beteiligungsgesellschaft MBH v. Kappos, 675 F. Supp. 2d 629, 642 (E.D. Va. 2009) ("[P]laintiff does not present a justiciable case or controversy, and

6

thus there is no jurisdiction to reach the merits."); <u>Charlottesville Area Fitness Club Operators</u>
<u>Ass'n v. Albemarle Cty. Bd. of Sup'rs</u>, 285 Va. 87, 98, 737 S.E.2d 1, 6 (2013) ("The prerequisites
for jurisdiction, an actual controversy regarding the adjudication of rights, may be collectively
referred to as the requirement of a 'justiciable controversy.'")

  Platania is also immune from suit given his role as a prosecutor under the doctrines of
absolute prosecutorial immunity and sovereign immunity for the Virginia common law claims.
The Fourth Circuit recently held immunity is a jurisdictional bar and a motion to dismiss on that
ground should be analyzed under Rule 12(b)(1). <u>See</u> <u>Cunningham v. Gen. Dynamics Info. Tech.,</u>
<u>Inc.</u>, 888 F.3d 640, 649 (4th Cir. 2018) ("[S]overeign immunity deprives federal courts of
jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must
dismiss the action for lack of subject-matter jurisdiction.") <u>See</u> <u>also</u> <u>Warner v. Doucette</u>, No.
6:18-CV-00064, 2019 WL 3432744, at *8 (W.D. Va. July 30, 2019) (analyzing Lynchburg
Commonwealth's Attorney's sovereign immunity under Rule 12(b)(6)); <u>Sloan v. Childress</u>, No.
3:18CV260, 2019 WL 4247978, at *6 (E.D. Va. Sept. 6, 2019) (analyzing prosecutorial
immunity under Rule 12(b)(1)).

  A motion to dismiss made under Rule 12(b)(1) tests the subject-matter jurisdiction of a
complaint. When addressing such a motion, the court must initially determine whether the
motion is a facial or factual challenge, as there are two distinct ways to present a motion to
dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), each of which trigger
different standards of review. <u>See</u> <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982). First, if
the Rule 12(b)(1) motion is a facial challenge attacking subject-matter jurisdiction by asserting
that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be
based[,]" then "the facts alleged in the complaint are assumed to be true and the plaintiff ... is

afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id. at 1219. Second, if the 12(b)(1) motion is a factual challenge, refuting the alleged jurisdictional basis of a complaint by asserting that, although facially adequate, the allegations are factually untrue, the district court may then consider extrinsic information beyond the complaint to determine whether subject-matter jurisdiction exists. Id.

2. **Rule 12(b)(6)**

Plaintiffs have also failed to state a claim for relief. In that regard, Rule 12(b)(6) of the Federal Rules of Civil Procedure supplies the appropriate standard of review. Rule 12(b)(6) allows a court to dismiss an action if a complaint fails to state a claim upon which relief can be granted. Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Legal conclusions, however, enjoy no such deference. Ashcroft v. Iqbal, 556 U.S. 662 (2009). As the Supreme Court pointed out in Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." 556 U.S. at 678 (Internal quotations omitted).

The Supreme Court has held that a complaint must contain "more than labels and conclusions" to state a plausible claim for relief, and that "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., v. Twombly, 550 U.S. 544, 555 (2007). To discount such unadorned conclusory allegations "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ibqal, 556 U.S. at 679. This approach recognizes that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint

8

to cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557). As the court further noted in Francis, "[a]t bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 588 F.3d at 193 (internal quotation marks omitted).

B.    **This Court lacks jurisdiction, because the Complaint fails to present a justiciable controversy.**

Plaintiffs seek a determination regarding the application of the Virginia gambling statutes to their Game. Specifically, Plaintiffs seek a declaration that their game does not constitute illegal gambling under Va. Code § 18.2-325 and that the game is not an illegal gambling device under Va. Code § 18.2-331. [Complaint at ¶¶ 45-48, 55, 60]. As such, Plaintiffs' objective is to improperly seek a determination of a disputed issue rather than an adjudication of their rights. Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty. Board of Supervisors, 285 Va. 87, 99, 737 S.E.2d 1, 6 (2013); Daniels v. Mobley, 285 Va. 402, 737 S.E.2d 895 (2013) (holding plaintiff who sought a declaration that a Texas Hold 'Em poker game did not violate Va. Code § 18.2-325 concerned a determination of a disputed issue rather than a request for adjudication of rights and, therefore, did not present a justiciable controversy). Moreover, Plaintiffs' request for a declaration that their Game does not constitute illegal gambling concerns the interpretation of a criminal statute. Declaratory relief is inappropriate to restrain a Commonwealth's Attorney in criminal matters. Daniels, 285 Va. at 899-900. Further, granting Plaintiffs' requested declaration concerning the legality of their game would amount to an improper advisory opinion. Daniels, 285 Va. at 900.

In <u>Daniels</u>, the Supreme Court of Virginia recently rejected a claim nearly identical to the one pursued by Plaintiffs. Plaintiff Charles P. Daniels ("Daniels") operated a charitable bingo hall in Portsmouth, Virginia known as Poker Palace. <u>Id.</u> at 897. Daniels began hosting games of Texas Hold 'Em poker at the hall for the Virginia Fraternal Order of Police to raise money primarily for charity. <u>Id.</u> Earle C. Mobley ("Mobley"), the Commonwealth's Attorney for Portsmouth, sent Daniels a letter stating he had concluded that "any and all poker games, or other forms of gambling not sanctioned by the Commonwealth of Virginia will be viewed by my office as illegal under Section 18.2-325 of the Code of Virgnia." <u>Id.</u> Mobley further stated violations of the statute would be subject to prosecution and that "[t]o avoid prosecution you must cease and desist any and all illegal gambling, forthwith." <u>Id.</u>

Daniels decided to close Poker Palace to avoid prosecution. <u>Id.</u> He then filed a declaratory judgment action to determine whether the game of Texas Hold 'Em constitutes illegal gambling under Section 18.2-325. <u>Id.</u> At trial, Mobley was granted a motion to strike after Daniels presented evidence from an expert in casino math, a math expert, and a world champion poker player. <u>Id.</u> The trial judge granted the motion "on the basis that a game of Texas Hold 'Em for a single player can last 24 hours or it could last for one hand, all the evidence indicates that the outcome of any one hand is uncertain; and so it is clear to me that this violates the statute as written." <u>Id.</u>

On appeal, the Supreme Court of Virginia held there was no justiciable controversy in the first place. The Court found,

> For a justiciable controversy to exist, it must be possible for the circuit court to render a decree yielding specific relief, such that the plaintiff's rights will be thereby affected. <u>Charlottesville Fitness</u>, 285 Va. at 98, 737 S.E.2d at 6 (citing <u>W.S. Carnes, Inc. v. Board of Supervisors</u>, 252 Va. 377, 383, 478 S.E.2d 295, 299 (1996) and <u>Erie Ins. Group v. Hughes</u>, 240 Va. 165, 170, 393 S.E.2d 210, 212 (1990)). "Thus, when the 'actual objective in the declaratory judgment

10

proceeding [i]s a determination of [a] disputed issue rather than an adjudication of the parties' rights,' the case is not one for declaratory judgment." Id. at 99, 737 S.E.2d at 7 (quoting Green v. Goodman–Gable–Gould Co., 268 Va. 102, 108, 597 S.E.2d 77, 81 (2004)); see, e.g., Board of Supervisors v. Town of Purcellville, 276 Va. 419, 435–36, 666 S.E.2d 512, 520 (2008) (allowing judgment for declaration of rights under written agreements to guide the parties in their future interactions).

Daniels, 737 S.E.2d at 898.

In Daniels' Complaint, he requested the trial court "declare that Texas Hold 'Em is not 'illegal gambling under Code § 18.2-325.'" Id. at 899. Daniels further asserted that "Code § 18.2-325 defines as 'illegal gambling' only those games in which the outcome is a matter of chance. Texas Hold 'Em does not fall within this definition because skill, rather than chance, is the primary determinate of success." Id. The Court found that Daniels' request "concern[ed] a determination of a disputed issue rather than a request for an adjudication of right, and thus does not present a justiciable controversy." Id.

The Court further held that Daniels' "request concerning a declaration that Texas Hold 'Em poker was not illegal gambling concerned the interpretation of a criminal statute" and "[t]he traditional perspective is that declaratory relief is inappropriate to restrain the sovereign in criminal matters." Id. at 899-900 (collecting cases). In light of the allegation that Mobley threatened Daniels with prosecution if he did not cease hosting Texas Hold 'Em games, the Court held the "criminal aspects of Daniels' declaratory judgment action are dominating, and the unstated right Daniels seemingly wants to vindicate relates to criminal prosecution, rendering declaratory judgment inappropriate." Id. at 900. As such, the Court found that "[g]ranting the requested declaration concerning the legality of Texas Hold 'Em poker would be merely an advisory opinion."

Here, Plaintiffs make the conclusory allegation that there is a justiciable controversy, asserting that there is no disputed issue of fact "because *how* the game operates is indisputable.

It always operates by the proprietary and patented software code that governs the Game. Thus the only question at issue in this proceeding is an adjudication of the parties' rights." [Complaint at ¶ 61]. In other words, Plaintiffs want everyone to simply take their word without question that their machine was programmed to be a skill based game not predominated by chance. That precise issue is very much in dispute just like the Texas Hold 'Em game in <u>Daniels</u>. Moreover, like Daniels, what Plaintiffs actually seek is a declaration that their "Game is not an illegal gambling device" under Virginia law. [Complaint at ¶ 68, Paragraph A(a) of the "Wherefore" clause.]. Plaintiffs, therefore, want to prevent Platania from instituting criminal prosecutions in connection with the use of their Game by having this Court issue an advisory opinion that adjudicates the very issue in dispute – whether Plaintiffs' Game is legal. That is not the proper role of the Court, and this case should be dismissed with prejudice.

**C.**    **<u>Plaintiffs' Due Process Rights Have Not Been Violated.</u>**

      **1.**    **Plaintiffs have no property rights in gambling devices.**

As an initial matter, Plaintiffs' allegation that their Due Process rights have been violated on the basis that Platania's threatened enforcement of the gaming statutes impinges on their fundamental property rights fails as a matter of law. It is well-settled that gambling does not implicate a constitutionally protected right. <u>United States v. Edge Broad Co.</u>, 509 U.S. 418, 426 (1993); <u>Martin v. Lloyd</u>, 700 F.3d 132, 135 (4th Cir. 2012); <u>Carolina-Virginia Racing Ass'n v. Cahoon</u>, 214 F.2d 830, 833 (4th Cir. 1954) ("In so far as plaintiff seeks to enjoin the enforcement of the anti-gambling statute of the state, which the state Supreme Court held applicable to its dog track, the principle applies that injunction will not issue to enjoin the enforcement of criminal statutes claimed to be unconstitutional in the absence of a clear showing of the invasion of a property right, and there is, of course, no property right to engage in gambling contrary to state

law."); see also, Carroll v. State, 361 So.2d 144 (Fla. 1978) (no constitutional right to conduct a gambling business); State v. McCleary, 65 N.C. App. 174, 308 S.E.2d 883 (1983) ("there is no constitutional right to gamble, and it is generally held that the law may rightfully regulate or suppress gambling without interfering with any of those inherent rights of citizenship which it is the object of the government to protect and serve.").  Accordingly, Plaintiffs' claim that their "fundamental property rights" have been violated must be dismissed with prejudice.

    **2.    Plaintiffs do not have standing to pursue a "void for vagueness" claim under the Due Process Clause.**

    Plaintiffs assert "[Platania's] interpretation and enforcement of the Virginia gambling statutes are void for vagueness" as applied to them.  [Complaint at ¶¶ 49, 55-56, 59 72]. Plaintiffs, however, have not been convicted or cited for a violation of any criminal statute by Platania.  A penal statute is not applied until the challenging party has been convicted or cited for violation of the statute.  See City of Chicago v. Morales, 527 U.S. 41, 50, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (deciding a vague-as-applied challenge where defendants were convicted under the statute); Kolender v. Lawson, 461 U.S. 352, 354, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (same); Coates v. City of Cincinnati, 402 U.S. 611, 612, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) (same); Cf. Tanner v. City of Va. Beach, 277 Va. 432, 435–36, 674 S.E.2d 848 (2009) (noise ordinance held unconstitutionally vague after accused was written multiple citations for violating the ordinance); Gray v. Commonwealth, 260 Va. 675, 681, 537 S.E.2d 862 (2000) (deciding vague-as-applied challenge to the Virginia statute prohibiting unregistered possession of a firearm silencer on appeal from accused's conviction under the statute); Woodfin v. Commonwealth, 236 Va. 89, 92, 372 S.E.2d 377 (1988) (deciding a vague-as-applied challenge to the Virginia capital murder statute on appeal from accused's conviction under the statute).

Here, the only action Platania has allegedly taken is to "issue[] a press release announcing his intention to prosecute *retailers* housing Plaintiffs' skill game because he 'determined' that the game is an illegal gambling device . . ." [Complaint at ¶ 2] (emphasis added). There is no allegation Platania has cited Plaintiffs with a violation of Virginia law, much less threatened Plaintiffs with prosecution. Accordingly, Plaintiffs have no standing to pursue an as applied challenge to Platania's interpretation of the Virginia gambling statutes.

### 3. The Virginia gambling statutes are not void for vagueness.

At best, Plaintiffs seeks to make a facial challenge to Virginia's gambling statutes. When considering a void-for-vagueness challenge, a court must look to see whether the law in question involves constitutionally protected conduct, and if it does not, the complainant must demonstrate that the law is impermissibly vague in all of its applications. Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 497 (1982). Further, a plaintiff contending that a statute is void for vagueness carries a very high burden. The Supreme Court's constitutional standard for demonstrating that a law is void for vagueness requires that the statute in question must "(1) fail[ ] to provide a person of ordinary intelligence fair notice of what is prohibited, or (2) [be] so standardless that it authorizes or encourages seriously discriminatory enforcement." U.S. v. Williams, 553 U.S. 285, 304 (2008). Moreover, a federal court must consider the decisions of the state courts interpreting the statute which may serve to limit or otherwise define the scope of the statute in question. Kolender v. Lawson, 461 U.S. 352, 355 (1983).

As set forth above, gambling does not implicate a constitutional right. As a result, Plaintiffs have the burden of demonstrating Virginia's gambling statutes are impermissibly vague in all of their applications. Plaintiffs cannot make such a demonstration. Indeed, the

14

Fourth Circuit has held that a similar gambling statute under South Carolina law was not unconstitutionally vague.

In Martin v. Lloyd, 700 F.3d 132 (2012), Plaintiff Jimmy Martin ("Martin") and Lucky Strike, LLC ("Lucky Strike") brought suit to enjoin the enforcement of two South Carolina statutes that prohibit certain "device[s] pertaining to games of chance." Id. at 134. Martin was in the business of developing and operating gaming machines. Id. After South Carolina passed anti-gaming legislation that outlawed a type of video poker Martin was developing, Martin removed all of his machines from the state. Id. Lucky Strike, in turn, operated gaming machines in convenience stores and other locations in South Carolina. Id. Lucky Strike joined Martin's lawsuit, asserting South Carolina had confiscated and destroyed hundreds of its machines. Id.

On appeal, the Court determined that South Carolina's gaming statutes did not implicate a constitutionally protected right since gambling is not a constitutional right. Id. at 135. As such, it was the plaintiffs' burden to show that South Carolina's gaming laws were invalid in all of their applications. Id. at 136. The plaintiffs did not dispute that the South Carolina laws clearly outlawed poker, blackjack, keno, lotto, bingo, and craps. Id. Instead, the plaintiffs asserted that the statutes contained a blanket prohibition against possessing any "other device pertaining to games of chance of whatever name or kind" which plaintiffs argued was impermissibly vague in all its applications. Id. The Court held that "use of the term 'games of chance' has a 'plainly legitimate sweep' and more than a conceivable application, which is all that is required to survive a facial challenge to a criminal statute where constitutional rights are not implicated. Id. at 136-37. In so holding, the Court relied in part on the fact that the Supreme Court of South Carolina had previously held that "pull-tab game machines were illegal games of

chance." Id. at 136 (citing Ward v. West Oil Co., 387 S.C. 268, 692 S.E.2d 516 (2010) and Sun Light Prepaid Phonecard Co. v. State of South Carolina, 360 S.C. 49, 600 S.E.2d 61 (2004).

Martin is directly on point and dispositive of Plaintiffs' claims. Sections 18.2-325 and 331 are not impermissibly vague in all of their applications. Indeed, even Plaintiffs would not dispute that Las Vegas style video game poker, for instance, would be illegal under the statutes since the Virginia laws prohibit the operation of machines or devices pertaining to games "depend[ent] upon elements of chance." Moreover, in at least one instance, the Court of Appeals of Virginia has applied Section 18.2-325 favorably. See e.g., Virginia Alcoholic Beverage Control Bd. v. VFW Ocean View Post-3160, 10 Va. App. 165, 390 S.E.2d 202 (1990) (holding "pull-tab cards" were "gambling devices" within the meaning of Section 18.2–325). As set forth above, the Fourth Circuit in Martin relied on similar holdings made by the South Carolina Supreme Court to determine that a substantively identical South Carolina gaming statute was not unconstitutionally vague.

Finally, Plaintiffs' allegations that Platania's interpretation of the laws at issue is "at odds with prior Attorney General Opinions and the ABC review of the Game" is of no consequence. Indeed, the ABC opinion concerning Plaintiffs' Game expressly stated it was not binding on elected officials who might reach a different conclusion. Moreover, the plaintiffs in Martin also unsuccessfully argued that inconsistent enforcement and judicial rulings in connection with the South Carolina statutes established their vagueness. Id. at 137. The Fourth Circuit rejected that argument, holding:

> A difference of opinion amongst judges or law enforcement does not make a statute unconstitutionally vague. See United States v. Williams, 553 U.S. 285 at 306 (2008) ("Close cases can be imagined under virtually any statute. The problem that poses is [not] addressed ... by the doctrine of vagueness ..."); The Real Truth About Abortion, Inc. v. Fed. Election Comm'n, 681 F.3d 544, 554–55 (4th Cir. 2012) (holding that a difference of opinion between a district court and

16

the Federal Election Commission on the enforcement of a regulation does not void the regulation for vagueness).  There will be gray areas in the interpretation of many statutes, and sometimes there will be inconsistency in the outcomes of marginal cases, but this is part and parcel of the process of statutory construction that is integral to our common law legal system.  See United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).

Martin, 700 F.3d at 137 (4th Cir. 2012).

Plaintiffs apparently argue that a reasonable person cannot understand that machines which are primarily based upon a random outcome, or chance, are illegal in Virginia.  Such an argument defies reasonableness and should be rejected.  Plaintiffs clearly seek to operate on the very fringes of legality.  Plaintiffs seek to push the definition of games "depending upon elements of chance" as far as they can in the direction of making such games effectively legal. However, the Supreme Court has declined to assist those who try to operate so close to the borderline of the law.  As held in FTC v. Colgate-Palmolive Co., 380 U.S. 374, 393 (1965), "it does not seem 'unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'" (quoting Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340 (1952)).  Accordingly, Plaintiffs' Complaint should be dismissed with prejudice.

**D.**     **Plaintiffs' Writ of Prohibition Fails as a Matter of Law.**

Plaintiffs cannot seek a writ of prohibition against Platania under Virginia law since such writs apply only to inferior courts, and Platania is not a judge.  Goodrich v. Commonwealth, 210 Va. 295, 295, 171 S.E.2d 256, 256–57 (1969).  Under Virginia law, the purpose of a writ of prohibition is "to restrain an inferior court from acting in a matter of which it has no jurisdiction, or in which it is transcending the bounds of its jurisdiction."  Moss v. Barham, 94 Va. 12, 26 S.E. 388, 388–89 (1896); In re Vauter, 292 Va. 761, 768, 793 S.E.2d 793 (2016) (A writ of "[p]rohibition is an extraordinary remedy issued by a superior court to prevent an inferior

17

court from exercising jurisdiction over matters not within its cognizance where damage or injustice is likely to follow from such action."). A writ of prohibition "is a remedy provided by the common law to redress the grievance growing out of an encroachment of jurisdiction, and issues properly out of a superior court to an inferior court, commanding them to cease from the prosecution of a suit, upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court." In re Vauter, 292 Va. at 768 (citing James v. Stokes, 77 Va. 225, 229, 1883 WL 5384 (1883)).

Platania is not a judge, and Plaintiffs cannot pursue a remedy that encroaches on Platania's authority to prosecute criminal matters. Daniels, 285 Va. at 900; see also Va. Code § 15.2-1627(B) (vesting Commonwealth's Attorneys with authority to prosecute felonies and misdemeanors). Regardless, a writ of prohibition cannot be entertained without a proceeding already pending in an inferior court. See Goodrich v. Commonwealth 210 Va. 295 (1969) (writ of prohibition denied where no proceeding had been instituted against the petitioner). Because there is no underlying criminal matter that has commenced, a writ of prohibition cannot possibly issue. Even if a writ of prohibition could issue, there is no basis for doing so. For the reasons set forth above, Plaintiffs cannot pursue any of their underlying claims against Platania. As such, there is no basis for prohibiting Platania from performing his job.

**E.    Platania is entitled to absolute immunity.**

As Commonwealth's Attorney for the City of Charlottesville, Platania has absolute immunity for prosecutorial activities. See Springmen v. Williams, 122 F.3d 211, 212-13 (4th Cir. 1997) (holding that the doctrine of absolute immunity squarely covers a prosecutor's decision to

go forward with a prosecution); <u>Vosburg v. Department of Social Services</u>, 884 F.2d 133 (4th Cir. 1989).

The common law immunity of prosecutors is based on the same considerations that underlie the common law immunities of judges and grand jurors. <u>Imbler v. Pachtman</u>, 424 U.S. 409, 422-23 (1976). A prosecutor's actions are intimately associated with the judicial process and thus are functions to which the reasons for absolute immunity apply with full force. <u>Id.</u>, at 430. Accordingly, where a prosecutor is acting within the scope of his duties and is involved with the charging process under Virginia law, his actions are intimately connected with the lawyer's role in judicial proceedings. Thus, the lawyer is entitled to absolute immunity from suit for his actions. <u>Andrews v. Ring</u>, 266 Va. 311, 320-21, 585 S.E.2d 780, 785 (2003).

The same rule applies under both state and federal law. <u>Hunter v. Virginia State Bar</u>, 786 F. Supp. 2d 1107, 1112 (E.D. Va. 2011); <u>Imbler v. Pachtman</u>, 424 U.S. 409, 421-29 (1976). This is so even if the prosecutor allegedly conspired with police officers to present false testimony and withheld exculpatory evidence before trial, because those actions are associated with the judicial process. <u>Carter v. Burch</u>, 34 F.3d 257 (4th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1101 (1995) (also holding that prosecutor is entitled to absolute immunity for actions in representing state in post-conviction motions and appeal, because those actions are part of the judicial process); <u>Burns v. Reed</u>, 500 U.S. 478, 491; 111 S.Ct 1934 (1991) (recognizing that prosecutors are absolutely immune for participating in a probable cause hearing and even from allegations that they solicited false testimony in judicial proceedings).

The Fourth Circuit has established that the decision to proceed with charges is intimately associated with the judicial process and one of those advocacy functions "to which the reasons for absolute immunity apply with full force." <u>Safar v. Tingle</u>, 859 F.3d 241, 250 (4th Cir. 2017).

As the Fourth Circuit explained, "if absolute immunity does not insulate prosecutors for their refusal to withdraw an arrest warrant, it would work an end run around [immunity] and give rise to an anomalous regime where criminal defendants could mount civil suits against prosecutors for the maintenance of arrest warrants even though those same defendants could not challenge the initial decision to seek a warrant." Id. This rule applies even though the "charges have been wholly discredited." Id. ("We recognize, of course, that Safar's case, at least as alleged in the complaint, presents a stark scenario where the charges have been wholly discredited. But absolute immunity 'does not exist to help prosecutors in the easy case; it exists because the easy cases bring difficult cases in their wake.' Van de Kamp, 555 U.S. at 349, 129 S.Ct. 855 (2009). In the mine run of cases, which generally turn on thorny factual questions, prosecutors should not be subject to 'the constant dread of retaliation' for the maintenance of arrest warrants. Imbler, 424 U.S. at 428, 96 S.Ct. 984.")

Simply put, where a prosecutor is acting within the scope of his duties and is involved with the charging process under Virginia law, his actions are intimately connected with the lawyer's role in judicial proceedings. See e.g., Imbler v. Pachtman, 424 U.S. 409 (1976). Thus, the lawyer is entitled to absolute immunity from suit for his actions. Andrews v. Ring, 266 Va. 311, 585 S.E.2d 780 (2003).

Platania has a legal duty under Virginia law to prosecute felonies and discretion to prosecute misdemeanors arising in the City of Charlottesville. Va. Code § 15.2-1627(B) (vesting Commonwealth's Attorneys with authority to prosecute felonies and misdemeanors). Plaintiffs do not dispute this. [Complaint at ¶ 85]. As a result, Platania's decision to prosecute retailers who continue to display Plaintiffs' Game is clearly within his discretion, and that decision is

protected by absolute immunity.  Accordingly, Plaintiffs' claims must be dismissed with prejudice.

**F.**      **Platania is also entitled to sovereign immunity.**

Platania has sovereign immunity for Plaintiffs' claims under Virginia law.  Platania has been sued in his official capacity as an attorney for the Commonwealth.  Platania is a constitutional officer whose duties are prescribed by law.  Va. Const. art. VII, § 4; <u>Doud v. Commonwealth</u>, 282 Va. 317, 321, 717 S.E.2d 124 (2011).  As such, the immunity of the Commonwealth extends to Defendant, and Defendant is immune from actions such as the one at bar which seeks to restrain governmental action.  <u>Afzall v. Commonwealth</u>, 273 Va. 226, 231, 639 S.E.2d 279 (2007); <u>see</u> <u>also</u> Va. Code § 8.04-195.3(6) (preserving immunity under the Virginia Tort Claims Act for a commonwealth's attorney for "any claim arising out of the institution or prosecution of any judicial or administrative proceeding, even if without probable cause."); <u>Warner v. Doucette</u>, No. 6:18-CV-00064, 2019 WL 3432744, at *7 (W.D. Va. July 30, 2019) (same).

The Supreme Court of Virginia addressed this very issue in <u>Daniels</u>:

> Additionally, to the extent that Daniels had requested a declaration of his rights, such declaration would be barred by sovereign immunity. A resolution of the declaratory judgment action in a manner which adjudicated Daniels' rights would enjoin the Commonwealth from acting, in violation of the prohibition articulated in <u>Afzall v. Commonwealth</u>, 273 Va. 226, 231, 639 S.E.2d 279, 282 (2007) ("'As a general rule, the Commonwealth is immune both from actions at law for damages and from suits in equity to restrain governmental action or to compel such action.' " (quoting <u>Alliance to Save the Mattaponi v. Commonwealth</u>, 270 Va. 423, 455, 621 S.E.2d 78, 96 (2005))).

<u>Daniels v. Mobley</u>, 285 Va. 402, 737 S.E.2d 895, 900–01 (2013).

Here, Plaintiffs are unquestionably seeking an adjudication of their rights under Virginia's gambling statutes.  This is an attempt at an end-run around the criminal process to

21

determine the legality of their Game before there has been any prosecution.  Platania cannot be enjoined from acting as a prosecutor, and he is entitled to sovereign immunity.

**G.**     **Plaintiffs' claims for temporary and permanent injunction fail for the same reasons their other claims fail.**

Plaintiffs seek "temporary injunctive relief . . . to preserve the status quo ante pending litigation."   A preliminary injunction is considered "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 811 (4th Cir. 1992) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3rd Cir. 1989)).  It is "never awarded as of right."   Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24, 129 S.Ct. 365 (2008).  Instead, a preliminary injunction is a "drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites."   American Civil Liberties Union of Florida, Inc. v. Miami–Dade County School Bd., 557 F.3d 1177, 1198 (11th Cir. 2009) (citations omitted).

In deciding whether to grant a preliminary injunction, Plaintiffs must demonstrate that (1) Plaintiffs are likely to succeed on the merits, (2) Plaintiffs are likely to suffer irreparable harm, (3) the balance of hardships tips in Plaintiffs' favor, and (4) the injunction is in the public interest. Winter, 555 U.S. at 20.   Each preliminary injunction factor must be "satisfied as articulated" for this Court to grant a preliminary injunction. The Real Truth About Obama, Inc. v. Federal Election Com'n, 575 F.3d 342, 347 (4th Cir. 2009), vacated on other grounds, Citizens United v. Federal Election Com'n, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010), aff'd, The Real Truth About Obama, Inc. v. F.E.C., 607 F.3d 355 (4th Cir. 2010) (per curiam); Pashby v. Delia, 709 F.3d 307, 320-21 (4th Cir. 2013).

22

Plaintiffs cannot satisfy any of these elements. First, for the reasons set forth above, Plaintiffs are not likely to succeed on the merits. For that reason alone, Plaintiffs should not be granted a temporary injunction. Second, there is no indication Plaintiffs have, or are likely to, suffer irreparable harm. By all acounts, Plaintiffs are still operating in other jurisdictions in Virginia. Moreover, nothing prevents them from installing games that do not violate Virginia law. Those same reasons weigh against a finding the balance of hardships tip in Plaintiffs' favor. Lastly, it is in the public's interest for the criminal process to not be subverted by a civil case such as this. For these reasons, Plaintiffs are not entitled to a temporary injunctions.

Finally, Plaintiffs also seek a permanent injunction. Again, Plaintiffs' failure to state a claim precludes the relief sought. Accordingly, Plaintiffs' request for temporary and/or permanent injunctive relief must be dismissed with prejudice.

## IV.     CONCLUSION

For all of the foregoing reasons, Defendant Joseph D. Platania, in his Official Capacity as Commonwealth's Attorney for the City of Charlottesville, respectfully requests that the Court grant his Motion to Dismiss, and dismiss the Complaint in its entirety and with prejudice.

**JOSEPH D. PLATANIA, IN HIS OFFICIAL CAPACITY AS COMMONWEALTH'S ATTORNEY FOR THE CITY OF CHARLOTTESVILLE**

/s/
David P. Corrigan (VSB No. 26341)
Jeremy D. Capps (VSB No. 43909)
M. Scott Fisher, Jr. (VSB No. 78485)
Attorneys for Defendant
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone

23

804-747-6085 - Fax
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com

# C E R T I F I C A T E

I hereby certify that on the 13th day of November, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/
_____
David P. Corrigan (VSB No. 26341)
Jeremy D. Capps (VSB No. 43909)
M. Scott Fisher, Jr. (VSB No. 78485)
Attorney for Defendant
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com

24