# EXHIBIT A



GENTRY LOCKE | Attorneys

Guy M. Harbert, III
P: (540) 983-9349
F: (540) 983-9400

June 2, 2016

**VIA EMAIL**

Michael Pace, President and CEO
Pace-O-Matic
4150 Blue Ridge Industrial Parkway
Norcross, GA  30071

Re:    Virginia Super Skill game

Dear Mr. Pace:

We have completed our review and analysis of the Virginia Super Skill games manufactured by Pace-O-Matic, Inc.  For the reasons set forth below, it is our opinion that the games do not violate the Virginia anti-gambling laws.  They are games of skill, not games of chance, and they are legal under the laws of the Commonwealth.

**The Games**

The Virginia Super Skill game is a video touch screen game that involves puzzle-solving skills. Each game terminal contains four separate games, which all operate on a similar principle and differ primarily in terms of graphic presentation.[1]  Each game displays symbols on a three by three square grid, and the object is to align three identical symbols in a row.  Winning combinations can be horizontal, vertical or diagonal, so that there are eight possible winning lines, much like a tic-tac-toe game.  A winning combination is achieved by selecting any one of the nine boxes, which in effect places a "wild card" symbol that will "connect" any two identical *adjacent* symbols to achieve a winning line.  Continuing with the tic-tac-toe analogy, the "wild card" can be both an "X" and an "O" at the same time so that it can connect lines of both "Xs" and "Os" simultaneously.  Each game is therefore a puzzle, which is solved by selecting the correct square for the "wild card."

The games are activated by inserting currency into a bill reader.  The currency is converted to points, with each point having the value of one cent. The games may be played at ten levels, from 40 points (40 cents) up to 400 points (four dollars) in 40 point (cent) increments. Once the level is selected, the player touches a "play" button and the nine symbols "spin" and come to rest displaying the next unsolved puzzle. A thirty second timer begins to run when the

---

[1] The four games are "Pirate's Prize" and "Pirates," which have a pirate motif, "Bombs and Bombshells," which has a military motif, and "Cocktail Cove," which has a beach motif.

10 Franklin Road SE, Suite 900  Roanoke, VA  24011 • PO Box 40013  Roanoke, VA  24022-0013
Toll Free:  866.983.0866

23402/1/7589260v1

 GENTRY LOCKE

Michael Pace, President and CEO
June 2, 2016
Page 2

puzzle is displayed, and the player must make his "wild card" selection within that time. Each unsolved puzzle can be successfully solved, but there are no "automatic" or "default" winners; success depends entirely upon the player using his or her skill to select the correct "wild card" square within the time allotted.

There is frequently more than one "winning" solution to each puzzle. Each game has ten symbols which may be displayed in the puzzle, and each symbol has a different value, ranging from 2.5% of the amount initially played up to 500 times the amount played, and a "bonus" symbol, which takes the player to a different game that will allow him to receive points in an entertaining manner that draws out the excitement of successful skillful play.[2] Therefore, truly successful play depends not only upon selecting a "wild card" square that yields a winning combination, but also selecting the square that results in the greatest number of winning combinations with the highest total value before the time runs out. If the player does not select the square that would give the best result, the game shows the player where the "best spot" is.[3]

The puzzles are randomly built by the machine's central processing unit, and again, every puzzle is capable of being solved, provided the player chooses the correct "wild card" square. However, the lower value symbols appear more often that those with higher value, and often the points yielded for successful play will be less than the amount played (the 2.5, 5, 10% results discussed above). Nevertheless, a player whose skill results in solving the puzzle optionally *always* has an opportunity to win at least 105% of the amount played. If the result of successful play returns less than 105% of the points played, the player is invited to participate in a "Follow Me" game, very similar to the "electronic game of memory skill invented by Ralph H. Baer and Howard J. Morrison" known as "Simon." (https://en.wikipedia.org/wiki/Simon_(game)). In this game nine animated colored circles are displayed. Using movement and sound, a pattern is

---

[2] The bonus round in three of the four games are "point and shoot" contests, where the objective is to hit as many moving targets on the screen as possible within a limited time – such as "shooting" various military targets with a "cannon" or "photographing" fish with a "camera." Points are awarded for each successful "hit." The better a player's hand-eye coordination, the greater his chances of winning. A complete lack of success on these bonus games will mean that the player loses whatever his initial play amount was (from 40 to 400 points), but even partial success may generate points considerably in excess of that initial play. In the fourth game, "Pirates," a set number of points is awarded in the bonus round, but the player gets to watch the awarding of those points by means of an entertaining video presentation.

[3] The games contain on screen instructions which summarize the game play as follows:

> TO WIN:  TOUCH ANY SYMBOL TO MAKE IT 'WILD'. THE OBJECT IS TO MATCH 3 LIKE SYMBOLS IN A ROW (MAYBE MORE THAN ONE LINE) THAT IS THE HIGHEST TOTAL VALUE BEFORE THE TIME RUNS OUT! PARTIAL PRIZES ARE AWARDED FOR LESS THAN PERFECT PLAY.  MATCH 3 [bonus symbols] TO START THE BONUS GAME.

 GENTRY LOCKE

Michael Pace, President and CEO
June 2, 2016
Page 3

established which the player must follow correctly through twenty-five rounds.[4] The instructions for this game appear on the screen as well:

> Nine symbols will be displayed. To answer correctly, touch the symbols in the correct animated pattern. Each time the symbols are touched correctly, an additional symbol will be added to the pattern.

Successful play of the "Follow Me" game will result in a total win of 105% of the points originally played.[5]

Finally, the game also has a feature that allows the player to see the result of the next play or "spin" *before* committing to play any points. This can be done for every level before any points are played.

**Legal Analysis – The Virginia Anti-Gambling Laws**

*Gambling Offenses*

Virginia law criminalizes certain gambling activities, declaring that it is a misdemeanor to engage in "illegal gambling," Va. Code §18.2-326,[6] or to be in possession of a "gambling device," Va. Code § 18.2-331,[7] and a felony to conduct an "illegal gambling operation," which is generally defined as an operation that generates $2,000 per day. Va. Code §18.2-328.[8] Certain

---

[4] In the first round, there is a single movement and sound, in the second there are two, three in the third, and so on. Obviously, the more movement and sound there is to remember, the more difficult the task becomes.

[5] If the puzzle was successfully solved, but less than 105% of the original amount of points played is awarded, then successful play of the "Follow Me" game awards whatever number of points is needed in addition to those awarded to net the player 105%. No points are lost if the "Follow Me" game is not successfully played. The player is not invited to participate in the "Follow Me" game if he fails to solve the puzzle in the manner that gives the best possible outcome.

[6] In pertinent part, this statute provides: "Except as otherwise provided in this article, any person who illegally gambles or engages in interstate gambling as defined in § 18.2-235 shall be guilty of a Class 3 misdemeanor. If an association or pool of persons illegally gamble, each person therein shall be guilty of illegal gambling."

[7] This statute states: "A person is guilty of illegal possession of a gambling device when he manufactures, sells, transports, rents, gives away, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of any gambling device, believing or having reason to believe that the same is to be used in the advancement of unlawful gambling activity. Violation of any provision of this section shall constitute a Class 1 misdemeanor."

[8] This statute reads as follows:

> The operator of an illegal gambling enterprise, activity or operation shall be guilty of a

23402/1/7589260v1

 **GENTRY LOCKE**

Michael Pace, President and CEO
June 2, 2016
Page 4

forfeiture proceedings may also apply with respect to the property used in "illegal gambling." Va. Code §19.2-386.30.[9] Obviously, analysis of any gambling issue must begin with the definition of the two key terms: "illegal gambling," and "gambling device."

### *What Constitutes "Illegal Gambling"?*

The code defines "illegal gambling" as "the making, placing or receipt of any bet or wager in the Commonwealth of money or other thing of value, made in exchange for a chance to win a prize, stake or other consideration or thing of value, dependent upon the result of any game, contest or any other event the outcome of which is uncertain or a matter of chance, whether such game, contest or event occurs or is to occur inside or outside the limits of the Commonwealth." Va. Code §18.2-325. This definition contains three essential components: (1) there must be *consideration* in the form of a "bet or wager,"[10] (2) which is made for in exchange

---

Class 6 felony. However, any such operator who engages in an illegal gambling operation which (i) has been or remains in substantially continuous operation for a period in excess of thirty days or (ii) has gross revenue of $2,000 or more in any single day shall be fined not more than $20,000 and imprisoned not less than one year nor more than ten years.

As used in this section, the term "gross revenue" means the total amount of illegal gambling transactions handled, dealt with, received by or placed with such operation, as distinguished from any net figure or amount from which deductions are taken, without regard to whether money or any other thing of value actually changes hands.

[9] This statute reads: "All money, gambling devices, office equipment and other personal property used in connection with an illegal gambling enterprise or activity, and all money, stakes and things of value received or proposed to be received by a winner in any illegal gambling transaction, which are lawfully seized by any law-enforcement officer or which shall lawfully come into his custody, shall be forfeited to the Commonwealth in accordance with the procedures contained in Chapter 22.1."

[10] The Virginia Code does not define "wager" or "bet," but we think a Virginia court would adopt the generally accepted definitions. A "wager" has been defined as:

A contract by which two or more parties agree that a certain sum of money or other thing shall be paid or delivered to one of them or that they shall gain or lose on the happening of an uncertain event or upon the ascertainment of a fact in dispute, where the parties have no interest in the event except that arising from the possibility of such gain or loss. The word "wagering" is practically synonymous with the words betting and gambling, and the terms are so used in common parlance and in statutory and constitutional enactments.

Black's Law Dictionary, (5th Ed.) p. 1416, citing McDonald v. Bryant, 381 S.W.2d 736, 738 (1964). Similarly, the word "bet" has been defined as:

An agreement between two or more persons that a sum of money or other valuable thing, to which all jointly contribute, shall become the sole property of one or some of them on the happening in the future of an event at present uncertain, or according as a question

23402/1/7589260v1

 **GENTRY LOCKE**

Michael Pace, President and CEO
June 2, 2016
Page 5

for an opportunity to win a *prize*, and (3) and that opportunity must be decided by a matter of *chance*.[11] If any one of the three elements does not exist, the activity does not constitute "illegal gambling."[12]

### *What Constitutes a "Gambling Device"?*

The General Assembly has struggled to define just what constitutes a "gambling device" under Virginia law, having amended Va. Code §18.2-325(3) twice in the past six years in its effort to do so. Under the current version of the statute, anything can be a "gambling device" if it is "actually used in an illegal gambling operation or activity." Va. Code § 18.2-325(3)(a). Therefore, the initial focus must be upon the definition discussed in the preceding section – if the activity constitutes "illegal gambling," then the instruments used to carry out that activity are "gambling devices."

However, there is a more technical definition in subsection (3)(b) of the statute that must be separately analyzed. There, it is declared that a "gambling device" is "any machine[13] ... which operates ... in such manner that, *depending upon elements of chance*, it may ... determine the prize ... to which the player is entitled."[14] Va. Code § 18.2-325(3)(b) (emphasis added).

---

> disputed between them is settled in one way or the other. A contract by which two or more parties agree that a sum of money, or other thing, shall be paid or delivered to one of them on the happening or not happening of an uncertain event.

Id., p. 146. Key to both definitions is the notion that the payment of the consideration will be based upon the uncertain outcome of an event. Where the outcome is certain, there can be no bet or wager.

[11] This definition of gambling has been accepted by multiple Virginia authorities: 1997 Virginia Attorney General Opinions 97; 1996 Virginia Attorney General Opinions 99; 1991 Virginia Attorney General Opinions 288; Maughs v. Porter, 157 Va. 415, 161 S.E. 242 (1931); see also, Rosenberg v. Commonwealth, 165 Va. 739, 181 S.E. 368 (1935); Vegas Time Ass'ts., Inc. v. Granfield, 18 Va. Cir. 33 (Fairfax Co., 1988); Newport Enterprises, Inc. v. Virginia ABC Board, 13 Va. Cir. 175 (City of Norfolk, 1988).

[12] For example, when skill predominates over chance in determining the outcome of the event, there is no gambling even if the elements of prize and consideration are present. 1987-88 Attorney General Opinions, p.284, May 31, 1988; 1987-88 Attorney General Opinions p. 287, July 20, 1988. Likewise, if nothing is paid or offered in order to participate in the event, there is no gambling even if the game is one of chance and a prize is awarded. 1997 Virginia Attorney General Opinion 97; 1972-73 Virginia Attorney General Opinion 238; 69-70 Virginia Attorney General Opinion 167.

[13] The concept of "machine" in this context specifically includes "electronic and video versions thereof" and "those dependent upon the insertion of a coin or other object for their operation." Va. Code §18.2-325(3)(b).

[14] The current definition is thankfully much simpler and more flexible than the previous version in effect until 1972, which declared illegal any "device that operates on the nickel-in-the-slot principle, in operation of which *any element of chance whatever may enter ...*". Va. Code §18.1-329(1) (emphasis added).

23402/1/7589260v1



GENTRY LOCKE

Michael Pace, President and CEO
June 2, 2016
Page 6

### The Virginia Super Skill Games Do Not Violate The Virginia Anti-Gambling Laws

We think it is self-evident that the Virginia Super Skill games involve the element of "consideration;" after all, the player pays to play. The player also has the opportunity to win a "prize." However, although the puzzles are randomly generated, successful play depends upon (1) the player's puzzle solving skills, (2) when a bonus game becomes available on three of the four games,[15] the player's hand-eye coordination,  and, (3) when the puzzle is solved but successful play does not result in an award of points in excess of 105% of those played, the player's memory skills in the "Follow Me" game.  In short, unless the player chooses to forego an opportunity, he can only lose if his skill proves to be insufficient.  Therefore, as a matter of common sense, it would seem that these are not "games of chance."

There are few Virginia court cases that provide much in the way of guidance as to what constitutes an illegal "game of chance." However, the Virginia Attorney General has issued several opinions that shed considerable light upon the issue. In 1988 the Attorney General analyzed two different games, and found both to be legal.  First, she addressed a mechanical crane game, which she described as follows:

> The machine you describe is operated by inserting a coin into it, which activates a crane with claws.  The player then manipulates the crane by the use of two control buttons and attempts to pick up a stuffed toy animal resting at the bottom of the machine beneath the crane.  If the player successfully secures the animal with the crane, the crane moves toward a receptacle where the toy is deposited for retrieval by the player.

(1987-88 Attorney General Opinions, p.284, May 31, 1988).   She concluded that the decisive legal issue was "whether the winning of a prize from the machine … depends upon 'elements of chance' – that is, *whether chance is the predominant factor in winning a prize*." Id., p. 285 (emphasis added). She concluded that "[w]hile chance undoubtedly plays some role in the operation of the crane, chance does not predominate to the extent that the machine would fall within the meaning of a 'gambling device.'" Id.

Several months later, she analyzed a machine similar to a "coin pusher," which she described as:

> … operated by inserting small tokens that have been purchased from the game operator into a metal slot, or "shooter, which the player moves from

---

[15] Again, the "bonus" award in the "Pirates" game is predetermined; the player is required to do nothing other than start the animation by which the points won through the skillful solving of the puzzle are awarded.

 GENTRY LOCKE

Michael Pace, President and CEO
June 2, 2016
Page 7

> side to side to roll the game tokens onto the playing surface of the machine. When enough game tokens are on the playing surface, an arm which moves in a forward and backward motion over the rear portion of the surface will come into contact with the game tokens and ultimately cause the game tokens, larger plastic prize tokens, or other prizes to fall off the front ledge of the playing surface and down a chute where they can be recovered by the player  The larger plastic prize tokens can then be exchanged for other prizes. The bar which pushes the tokens forward can be stopped by depressing a button. Prior to reactivating the bar to move it in a forward motion, the player may attempt to place a number of game tokens on the playing surface in order to increase the probability of recovering the larger plastic prize tokens or prizes.

Id., p. 287. She again stated that "the threshold question is whether the winning of a prize from the machine depends upon 'elements of chance' – that is whether chance is the predominant factor in winning a prize" and concluded that "[i]f chance is not the predominant factor in winning a prize, the machine is not a 'gambling device' as defined in 18.2-325(2)(b)." Id., p. 288. Because "[t]he player exerts control over (1) the shooter in attempting to place tokens on the playing surface and (2) the bar in deciding whether or not it should be stopped while the tokens are being played," she found that "skill, rather than chance, is the predominant factor." Id. Finally, she again observed that "[w]hile chance undoubtedly plays some role in the operation of the machine, it is my opinion that chance does not predominate to the extent that the machine would fall within the meaning of a 'gambling device.'" (Id.).

We believe that these two opinions provide very strong support for the conclusion that the Virginia Super Skill games are games of skill, and therefore do not fall within the definition of "gambling device." The player's decisions and actions directly influence the outcome of the games. While some chance may be involved, it is the player's skill that determines the outcome.[16]

---

[16] The "skill predominates over chance" analysis has been applied by other attorney generals in other less similar contexts as well. A bass fishing tournament has been found to be a game of skill. 1975-76 Attorney General Opinions p. 2070. "In contrast, another Opinion concludes that the game of Skilo, which combines the elements of bingo and bowling on a miniature lane, constitutes illegal gambling since 'the opportunity for skill is extremely small.'" 1987-88 Attorney General Opinions p. 285, citing 1971-72 Attorney General Opinions p. 260). Use of this analysis is also consistent with the generally accepted definitions of a "game of chance." Black's Law Dictionary defines the term is as follows:

> One in which result as to success or failure depends less on skill and experience of player than purely fortuitous or accidental circumstances incidental to game or manner of playing it or device or apparatus with which it is played, but not under control of player.

Black's Law Dictionary (5th Ed.), p. 611, citing, Kansas City v. Caresio, 447 S.W.2d 535, 537 (Mo. App. 1974). The standard lay definition is no different: "a game (as a dice game) in which chance rather than skill determines the

23402/1/7589260v1

 GENTRY LOCKE

Michael Pace, President and CEO
June 2, 2016
Page 8

We think it is also of considerable significance that a court in another jurisdiction – Pennsylvania – has found these games to be legal games of skill. In the case of In re Pace-O-Matic, Inc. Equipment, M.D. 965-2013 (Ct. Common Pleas, Beaver County 2013), the court utilized the "skill vs. chance" analysis that we think a Virginia court would apply,[17] and concluded that the games were legal. The court noted that "[a]lthough there often is ... an 'obvious' position where placement of the wild would generate a nonzero score, several puzzles have a position where placement of the wild will lead to a more advantageous score," and concluded that "[i]t takes skill for a player to recognize both which symbols are most advantageous to his or her payout and which position will maximize the player's score." Id., pp. 7-8. The court went on to note that a player who lacks the skill to determine the most advantageous placement of the wild symbol "will not achieve as high a score as one who does recognize those patterns," and found that "[w]ere the game one predominantly based on chance, one would reasonably expect that a skilled player and an unskilled player would stand to gain roughly the same score ." Id., p. 8. The court found that the fact the game used a random number generator to produce the puzzles was irrelevant, as it did not "determine whether a player wins or loses," but simply to "determine which puzzle in a finite pool of puzzles will be presented to the player." Id. Finally, the court noted that unlike a game of poker where even the most skilled player is "subject to defeat at the turn of the cards ... the players of the Pennsylvania Skill game are not at the mercy of the hand they are dealt .... In this game, the player's choices are the "instrumentality for victory"" – in sharp contrast to the capricious nature of card dealing and shuffling present in a traditional game of Texas Hold 'Em." Id. The court then went on to reach

---

outcome." http://www.merriam-webster.com/dictionary/game%20of%20chance.

[17] The court observed:

> That successful play is determined by chance rather than skill is an element essential to a finding that the machine is a gambling device per se. Courts must determine in each case the relative amounts of skill and chance present in the play of each machine and the extent to which skill or chance determines the outcome. In order for a game to constitute illegal gambling, it must be a game where chance predominates rather than skill. A showing of a large element of chance, without more, is not sufficient, and the outcome need not be wholly determined by skill in order for a machine to fall outside the gambling per se category. The mere fact that a machine involves a substantial element of chance is insufficient to find that a machine [is] a gambling device.

> A game decided predominately on the basis of probability than any real input of skill from a player will be a game of chance. The level of interactivity and the consequences of a player's choices in playing the game are relevant in determining whether the game is one of chance or skill ...

(Id., pp. 5-6, citing Commonwealth v. Two Elec. Video Poker Game Machs., 465 A.2d 973, 977 (Pa. 1983). We believe that is precisely the analysis a Virginia court would adopt.



Michael Pace, President and CEO
June 2, 2016
Page 9

the rather self-evident conclusions that the bonus game, the outcome of which is dependent upon "hand-eye coordination and dexterity," and the "Follow Me" game, which is decided by the player's memory skill, are not games of chance. Id., pp. 10-11.

**CONCLUSION**

It is our opinion that if a Virginia court were to address the question of whether the Virginia Super Skill games constituted "illegal gambling devices," the court would apply a "skill vs. chance" analysis and conclude that the element of skill predominates over the element of chance so that the games are legal. This conclusion would be consistent with prior opinions of the Virginia Attorney General, the commonly accepted definitions of "games of skill" and "games of chance," and the conclusion of court in Pennsylvania, which conducted an exhaustive analysis of the games.

Very truly yours,

GENTRY LOCKE

Guy M. Harbert, III

GMH,III/fv

23402/1/7589260v1