IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| QUEEN OF VIRGINIA SKILL & ENTERTAINMENT, LLC, POM OF VIRGINIA, LLC, and MIELE MANUFACTURING, INC., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 3:19-cv-00065 |
| JOSEPH D. PLATANIA, in his official capacity as Commonwealth's attorney for the City of Charlottesville, | ) ) ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

Plaintiffs Queen of Virginia Skill & Entertainment, LLC ("Queen of Virginia"), POM of Virginia, LLC ("POM VA"), and Miele Manufacturing, Inc. ("Miele Manufacturing") (collectively, "Plaintiffs"), through the undersigned counsel, submit the following memorandum of law in support of their Motion to Remand:

**INTRODUCTION**

The Queen of Virginia Skill Games ("the QVS Games") are legal, and Plaintiffs stand ready, willing and able to prove it. Defendant, however, argues that this case should be dismissed because there is no justiciable controversy, he is entitled to absolute immunity, and Plaintiffs' due process rights have not been violated. Defendant is wrong as to all of these arguments. Plaintiffs' unilateral "decision" to outlaw Plaintiffs' games in Charlottesville was not only incorrect as a matter of law (Plaintiffs' games are, in fact, legal under Virginia law), but also outside the scope of his lawful authority and at odds with all persuasive and mandatory authority

1

on the subject. Defendant's motion to dismiss suffers from the same flaw as his press release: it presumes the illegality of Plaintiffs' games without the proper investigation and without affording Plaintiffs an opportunity to be heard and defend themselves. Ultimately, this presumption, on which Defendant's entire argument hinges, raises a fundamental question of state law: whether the QVS Games amount to illegal gambling devices under Va. Code § 18.2-325.

Plaintiffs' allegations must be assumed true on a motion to dismiss. Yet Defendant repeatedly argues that this case should be dismissed because he is allowed to prosecute illegal gambling. While it is true that a Commonwealth Attorney can (and should) prosecute illegal gambling, Plaintiffs' games are *not* illegal gambling. That is the point. Moreover, Defendant is not entitled to act as prosecutor, judge, and jury by declaring in a press release that Plaintiffs' games are illegal in Charlottesville. Especially when Plaintiffs' games are allowed in other jurisdictions in Virginia, have been determined to be lawful skill games by the Virginia ABC, and have been determined to be legal by a variety of attorneys, government officials, and former government officials.

Defendant claims that "nothing prevents [Plaintiffs] from installing games that do not violate Virginia law." (ECF No. 8, at 23). To the contrary, that is exactly what Defendant did when he unilaterally announced that Plaintiff's lawful games were illegal. Almost immediately, Plaintiffs' customers removed the games from Charlottesville. Defendant is not only preventing Plaintiffs from installing their games in Charlottesville, but also arguing that Plaintiffs do not have the right to defend themselves and prove the legality of the games in court because he is entitled to absolute immunity. Plaintiffs, then, are stuck in a Catch-22. Defendant can effectively

declare Plaintiffs' games illegal, but Plaintiffs are not afforded an opportunity to defend themselves and prove the games legal.

Plaintiffs are ready and eager for a court to determine that the games are legal. While Plaintiffs are confident that this Court would reach the same conclusion, Plaintiffs believe that this case involves fundamental issues of state law -- whether Plaintiffs' skill games are, in fact lawful under Virginia law, and whether a Commonwealth's Attorney can declare skill games to be illegal in his jurisdiction without affording the owners of such games due process -- that are better addressed by state courts. Moreover, the Virginia Constitution provides as much protection as the United States Constitution with respect to the issues raised in Plaintiffs' Complaint.

Contemporaneously with this Motion, Plaintiffs have filed an Amended Complaint that relies entirely on state law and the Virginia Constitution, rather than federal law. In the Amended Complaint that now governs this dispute, Plaintiffs make no claim under 42 U.S.C. § 1983 or the United States Constitution. *See generally* ECF No. 9. As such, there is no longer a federal question, and there are no longer any federal claims for this Court to consider. In such circumstances, there is a strong preference for remand. *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 196 (4th Cir. 2002) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). While Plaintiffs acknowledge that the amendment of their complaint does not technically divest this Court of subject matter jurisdiction, this Court can and should exercise its discretion under 28 U.S.C. § 1367(c) to remand the case to the Circuit Court for the City of Charlottesville as a matter of fairness and comity.

## LAW & ARGUMENT

28 U.S.C. § 1367(c) provides that the district court may decline to exercise supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law,

3

(2) the claim substantially predominates over the claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction," or where there are other compelling reasons for declining jurisdiction. "[W]hen a district court may relinquish jurisdiction over a removed case involving pendent claims, the court has discretion to remand the case to state court." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). Courts may exercise their discretion to decline to exercise supplemental jurisdiction over remaining state law claims upon consideration of "the values of economy, convenience, fairness, and comity." *Id.* See also *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 448-49 (4th Cir. 2004).

Except in extraordinary circumstances, "when federal claims are no longer part of a case, a district court should usually decline to exercise its jurisdiction to hear supplemental claims absent extraordinary circumstances." *Alicea v. Outback Steakhouse,* 2011 WL 1675036, at *5 (D.N.J. May 3, 2011) (citations omitted), *report and recommendation adopted,* 2011 WL 2444235 (D.N.J. June 9, 2011). *Accord Darcangelo*, 292 F.3d at 196. No extraordinary circumstances exist here. Instead, there are significant issues of comity, and remand is appropriate. If "dismissal of the federal claim occurs early in the pre-trial period, concerns of fairness and judicial economy are less likely to be significant, and concerns of comity and federalism are more likely to predominate and counsel against retaining jurisdiction." *Crumble v. Am. Bus. Mortgage Servs., Inc.*, 2003 WL 24198400, at *2-3 (E.D. Va. Apr. 2, 2003), *aff'd sub nom.*, *Crumble v. New Directions Mortgage Co.*, 77 Fed. App'x 665 (4th Cir. 2003). Here, Defendant removed this matter in October 2019. The case is in its infancy. No answer has been filed, and discovery has not yet begun. While the economy factor "adds little to the analysis because these proceedings are at such an early stage . . . because Virginia courts are best

4

positioned to evaluate Virginia law, remand may be the most efficient option." *Boone v. CSX Transp., Inc.*, 2018 WL 1308914, at *5 (E.D. Va. Mar. 13, 2018).

As to comity, this action turns on Virginia law. Defendant incorrectly asserts that the QVS Game terminals are illegal gambling devices. This contention implicates Virginia's statutory scheme for the designation of illegal gambling devices as well as the appropriateness, under Virginia law, of declaratory relief to clarify Plaintiffs' rights following threatened criminal prosecution of third parties, and the threatened seizure and civil forfeiture of Plaintiffs' QVS Game terminals, that would adversely affect Plaintiffs' property and their right to transact lawful business. *See* ECF No. 8, at 9-12. Defendant's primary argument in his motion to dismiss is that Plaintiffs' request for a declaratory judgment "improperly seek[s] a determination of a disputed issue rather than an adjudication of their rights" and Defendant relies exclusively on Virginia law in support of this point. *Id.*, at 9. Defendant's argument as to the existence of a justiciable controversy relies heavily on the Virginia Supreme Court's decision in *Daniels v. Mobley*, 285 Va. 402 (2013). *Id.* The Virginia Supreme Court's opinion in *Daniels* remains undeveloped in Virginia Courts. As a result, a Virginia court is more appropriately situated to apply, interpret, and construe *Daniels'* holding and rationale. *See Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617-18 (4th Cir. 2001) (affirming remand order where remaining state claims "involved interpretations of complex South Carolina statutes on which there was no State precedent"); *Dunlevy v. Coughlin*, 2016 WL 595300, at *4 (E.D. Va. Feb. 10, 2016) ("[T]he primary responsibility for developing and applying state law rests with state courts."). As a matter of comity, this case should be remanded.

Plaintiffs' excision of any federal question from the amended complaint should not alter this analysis. Where a plaintiff that has asserted federal claims then deletes those claims in a

5

subsequent, superseding complaint, remand is appropriate. *See Dunlevy* 2016 WL 595300, at *3-4 (remanding action where federal claims were either dismissed by court or omitted by the plaintiff in an amended complaint); *Penza v. Mungo*, 2014 WL 2780405, at *3 (D.S.C. June 19, 2014) (remanding section 1983 case back to state court after removal where plaintiff amended complaint to raise tort claims and claims under the South Carolina Constitution because "a plaintiff is the master of his claim and may avoid federal jurisdiction by relying exclusively on state law") (citation omitted); *McDowell v. S.C. Dept. of Corr.*, 2010 WL 5508364, at *2 (D.S.C. Dec. 8, 2010), *report and recommendation adopted* 2011 WL 31041 (D.S.C. Jan. 5., 2011) ("It is recommended that Plaintiffs' motion to remand be granted, as the amended complaint raises only state law claims."); *Frazier v. Zavaras*, 2010 WL 965294, at *3 (D. Colo. Mar. 4, 2010) (granting motion to remand where plaintiff "specifically alleges that he is asserting claims only under the Colorado constitution").

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Court grant the instant Motion and remand this matter to the Circuit Court for the City of Charlottesville.

Dated: December 4, 2019

Respectfully submitted,

*/s/ Jason C. Hicks, Esq.*
Jason C. Hicks, VSB # 46961
Ian R. Dickinson, VSB # 92736
WOMBLE BOND DICKINSON US, LLP
201 E. Main Street, Suite P
Charlottesville, VA 22902
Tel: 202-857-4536
Fax: 202-261-0013
Jason.Hicks@wbd-us.com

6

Anthony F. Troy, VSB # 05985
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
919 E. Main Street, Suite 1300
Richmond, VA 23219
Tel: 804-788-7751
Fax: 804-698-2950
ttroy@eckertseamans.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 4th day of December, 2019, a true and exact copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

David P. Corrigan (VSB No. 26341)
Jeremy D. Capps (VSB No. 43909)
M. Scott Fisher, Jr. (VSB No. 78485)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
jcapps@hccw.com
sfisher@hccw.com
*Attorneys for Defendant*

/s/ *Jason C. Hicks, Esq.*
Jason C. Hicks, Esq.